Muhammad YUNIS, Plaintiff,

v.

UNITED STATES of America, Depart. of Veterans Affairs and Does 1–10, Inclusive, Defendants.

United States of America, Counterclaimant,

v.

Muhammad Yunis, Individually and as Trustee of the Sky Meadow Street Trust UDT 9/11/97; Kendàll L. Angell, as Trustee for the Angell Family Trust UDT 6/20/97; Sky Meadow Association, a California nonprofit corporation; and Coast Assessment Service Company, a California Corporation, Counterdefendants.

No. CV 97–7863 RAP.

United States District Court, C.D. California.

July 24, 2000.

James J. Mazzeo, James J. Mazzeo Law Offices, San Diego, CA, for Plaintiff.

Leon W. Weidman, Kurt E. Ramlo, Asst. U.S. Atty., Office of U.S. Attorney, Los Angeles, CA, Michael D. May, Michael May Law Offices, Anaheim, CA, for Defendants.

## ORDER GRANTING THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE PLAINTIFF AND COUNTERDEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

RICHARD A. PAEZ, Circuit Judge, Sitting by Designation.

## I.

### Introduction

In this quiet title action under 28 USC § 2409(a), plaintiff Yunis seeks to quiet title to real property that he purchased at a non-judicial foreclosure sale initiated by Sky Meadow Association ("Sky Meadow") when defendant United States Department of Veterans Affairs ("VA") failed to pay association assessment fees. Plaintiff and counterdefendants Sky Meadow and Coast Assessment Service Company ("Coast Assessment") maintain that the sale was authorized under Sky Meadow's Declaration of Covenants, Conditions, and Restrictions ("CC & R's") and state law. Plaintiff further argues that because the sale was authorized by state law and sanctioned by federal law, the trustee's sale terminated the VA's rights to the property.[1]

Although the VA does not dispute that the non-judicial foreclosure sale complied with state law, it challenges the propriety of Sky Meadow selling property owned by the United States. The VA contends that under the Property and Supremacy Clauses of the Constitution, only the United States can sell or otherwise dispose of property owned by the United States. The United States also contends that the resolution of this issue is properly governed by federal and not state law. Thus, the United States, pursuant to its counterclaim, seeks a declaration that the Trustee's Deed Upon Sale conveying the subject property to plaintiff is void. The VA recognizes, however, that were the Court to grant such relief, the United States would be obligated to reimburse plaintiff Yunis for the amount he paid for the property ($2,186.75) and pay all past due assessment fees to Sky Meadow.

Because there are no factual disputes regarding the VA's failure to pay assessment fees and the events leading up to the foreclosure sale, the legal issue raised by the VA, i.e. whether the Supremacy and Property Clauses of the Constitution preclude the use of non-judicial foreclosure by a private party to sell property owned by the United States in order to satisfy a debt it admittedly owes, is ripe for partial summary judgment. Upon consideration of the parties' cross motions for partial summary judgment, the Court has concluded, for the reasons set forth below, that the

---

1. Plaintiff Yunis initially filed an unlawful detainer action against the VA in state court. The government removed the action to federal court pursuant to 28 U.S.C. §§ 1442 and 1441, and counterclaimed against plaintiff Yunis, Sky Meadow, Coast Assessment, and Kendall L. Angell ("Angell").

VA's motion should be granted and that the cross-motions by plaintiff and counter-defendants should be denied.[2]

At the outset, the Court recognizes and the VA does not dispute that it was the VA's own negligence in failing to pay the association assessment fees that prompted Sky Meadow to initiate foreclosure proceedings under the CC & R's. The VA employees' negligence, however, does not justify or validate a non-judicial foreclosure sale of property owned by the United States. To allow such a sale under state law in the context of this case would be detrimental to the national interest of providing eligible veterans with financial assistance in obtaining home loans from private mortgage lenders. Thus, the Court agrees with the VA that federal law should govern the outcome of this action, and the appropriate rule of decision is federal and not state law.

## II.

### *Factual Background*

In 1992, Zoltan Buky and his wife purchased a residence located at 5981 Sky Meadow Street, Riverside California. Because Zoltan Buky was an army veteran, he qualified for assistance under the VA's Home Loan Guaranty Program and his loan was guaranteed by the VA. The VA Home Loan Guaranty Program allows eligible veterans to forego the private lenders' normal requirement of a 20% down payment, thereby enabling the veteran to purchase a home with little or no down payment. Under the program, if the veteran defaults on the loan payments the private lender can foreclose on the deed of

trust and then convey the property to the VA. Upon conveyance of the property, the VA pays the lender fair market value, determined by an appraisal, less the estimated cost to the VA of marketing and selling the property. Under the statutory scheme the lender retains the right to claim additional loss for unpaid interest and costs incurred in servicing the defaulted loan, plus legal expenses related to the foreclosure. 38 U.S.C. § 3732

The Buky's subsequently defaulted on their loan and the lender, Nationsbanc Mortgage Corporation, foreclosed on their trust deed on September 13, 1996. On September 16, 1996 a Trustee's Deed Upon Sale was recorded. On September 18, 1996, Nationsbanc transferred the Buky's property to the VA by recording a grant deed dated September 16, 1996. The grant deed specified that tax statements were to be mailed to the VA's Los Angeles office. At the time of the conveyance, Nationsbanc provided the VA with an appraisal that appraised the market value of the property at $68,000 as of July 1996.

As required by the Home Loan Guaranty Program, the VA paid Nationsbanc $57,725. On February 19, 1997, the VA paid Nationsbanc an additional $27,368.18. Thus, VA's total acquisition costs were $85,093.18. This sum was paid from what was then known as the VA's Home Loan Guaranty Revolving Fund.[3]

Pursuant to an agreement with VA, Homelife Discount Brokers assumed management responsibilities for the Sky Meadow property on October 17, 1996.[4]

2. Counterdefendants Sky Meadow and Coast Assessment filed a partial summary judgment motion in which plaintiff and counterdefendant Yunis and counterdefendant Angell joined, arguing that the non-judicial foreclosure sale was proper and that it extinguished any claim VA had to the property at issue.

3. This provision, previously found at 38 U.S.C. § 3724, was repealed by Congress in 1998. In its place, Congress enacted 38

U.S.C. § 3722, establishing the Veterans Housing Benefit Program Fund.

4. It is disputed by the parties what services Homelife provided and whether they fulfilled their obligations. The VA claims that Ron Richardson, Homelife's representative inspected the property, installed the VA's locks on the property, and posted a notice on the property that it belonged to the VA. (Richardson Decl. at ¶ 8.) Richardson further claims that he made bimonthly inspections of the

On October 1, 1996, the newly opened VA San Diego field office assumed responsibility for VA-acquired properties in Riverside County. The VA's Los Angeles office notified its management and sales brokers of the change, and published notices in the Los Angeles Times and the San Diego Union–Tribune.

The Sky Meadow CC & R's which govern the homeowners association contain a provision granting the association lien rights to the properties in the association for unpaid assessment fees. Pursuant to the CC & R's, Sky Meadow reserved the right to secure payment of the assessment fees by non-judicially foreclosing on the assessment liens. These covenants, in the CC & R's, run with the land and are binding upon anyone acquiring any right, title, or interest in Sky Meadow.

After the VA acquired the Sky Meadow property it failed to pay the association assessment fees. On March 12, 1997, counterdefendant Coast Assessment, on behalf of Sky Meadow, mailed the VA a Pre–Lien Demand for unpaid assessment fees on the property. On March 28, 1997, Coast Assessment recorded a Notice of Delinquent Assessment against the property. On April 29, 1997, when the VA still had failed to pay the assessments, Coast Assessment recorded a Notice of Default and Election to Sell under the Assessment Lien. Coast Assessment claims to have posted the notice at 5981 Sky Meadow Street, the Buky's former residence.

On August 1, 1997, the VA listed the property for sale at $67,000. The VA received three offers to purchase, one for $67,111, another for $68,000, and one for $67,100.

Also on August 1, Coast Assessment claims to have posted a Notice of a Trustee's Sale at the residence, which noticed the sale for August 28, 1997. Mark L.

Morger, President of Coast Assessment, states that he posted the notice at the property. The sale was rescheduled for September 11, 1997. On that day, Coast Assessment purported to sell the property to Muhammad Yunis.[5] He paid $2,186.75, far less than the fair market value of the property and just one cent more than what was due in assessment fees. Coast Assessment recorded the Trustee's Deed Upon Sale conveying title to Yunis.

Coast Assessment mailed the Pre–Lien Demand, the Notice of Default and Election to Sell, and the Notice of a Trustee's Sale to the VA's Los Angeles field office rather than to the San Diego field office. The VA's San Diego office claims it never received any of the notices. The VA admits, however, that the various notices were delivered to the mail room at the VA's office in Los Angeles. The VA's San Diego office employees maintain that prior to the sale, they were never aware of Sky Meadow's attempt to collect the delinquent assessments or the foreclosure proceedings.

On October 9, 1997, after the sale, the VA offered to pay Yunis the amount he paid for the property. In addition, the VA offered to pay Sky Meadow all past due assessment fees. On January 26, 1998, Coast Assessment returned a check for $2,000 to the VA, which it had tendered for payment of any delinquent assessment fees. The VA continues to offer to pay all past due assessments from the date VA took title.

By congressional mandate, the VA is required to sell properties acquired through the Home Loan Guaranty Program for the highest price as quickly as possible. 38 U.S.C. § 3733(d). The VA uses funds from the Veterans Housing Benefit Program Fund to reimburse lenders for their losses and costs in acquiring

---

property and prepared it for sale. (Richardson Decl. at ¶ 8.) This is the only major factual issue in dispute and it is not material to determining the partial summary judgment motions before the Court.

5. Muhammad Yunis is a trustee of the Sky Meadow Street Trust.

the properties and replenishes the fund with the proceeds from subsequent sales. 38 U.S.C. § 3722(b),(c). Here, by foreclosing on its assessment liens, Sky Meadow caused the VA to sustain a substantial loss to its loan guaranty fund.

Under the provisions of the VA Home Loan Guaranty Program, only the Secretary of the VA is entitled to sell VA property. The provision states "[n]otwithstanding the provision of any other law, with respect to matters arising by reason of this chapter, the Secretary may ... purchase at any sale, public or private, ... and take title to, property, real, personal, or mixed; and similarly sell, at public or private sale, exchange, assign, convey, or otherwise dispose of such property." 38 U.S.C. § 3720(a)(5). Once VA acquires property it must list the property with local real estate brokers to obtain the quickest sale at the highest price. 38 U.S.C. § 3733. The only purpose for which the VA may depart from this mandate and accept low or nominal value for its property is by selling, leasing, or donating the property to assist and shelter homeless veterans and their families. 38 U.S.C. § 3735.

The VA acknowledges that its property is subject to state regulation to the extent that it is not inconsistent with federal law. 38 U.S.C. § 3720(a)(6). It asserts, however, that the actions taken by Sky Meadow and its agents were in direct contravention of federal law and federal property rights.

The VA remains in possession of the property. Yunis, however, has given a trust deed to counterdefendant Angell, to secure a loan for $48,600.

### III.

### *Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the nonmoving party. The moving party need not disprove the other party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party can dispose of the moving party's case "by submitting affirmative evidence that negates an essential element of the nonmoving party's claim or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *High Tech Gays v. Defense Industrial Secur. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable

inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 *citing Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. *Id.* at 252, 90 S.Ct. 1598. As the Supreme Court explained in *Matsushita,*

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348.

■ To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, must set forth "such facts as would be admissible in evidence," and must show that the declarant or affiant is competent to testify concerning the facts at issue. Fed.R.Civ.P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

Summary judgment is not treated as "a disfavored procedural shortcut" but as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 *quoting* Fed.R.Civ.P. 1.

## IV.

### *Discussion*

#### A. Governing Law

■■ The crux of Sky Meadow's argument is that state law permitted it to foreclose upon its assessment lien because the VA failed to pay delinquent assessments.[6] California Civil Code §§ 2924, 2924(b), 2924(c) permit a trustee's sale of property pursuant to a written contract. The government does not dispute that against any other party, Sky Meadow could properly collect unpaid assessment fees by foreclosing on its assessment liens. Additionally, the VA does not dispute that when it acquired the property it assumed the obligation under the CC & R to pay assessment fees. The government maintains, however, that because it is the owner, federal law applies and Sky Meadow cannot sell federally owned property—only the federal government can sell or otherwise dispose of its own property. There-

6. Sky Meadow also argues that the United States has expressly consented to the application of state law under the statute's sue and be sued clause. 38 U.S.C. § 3720(a)(1). When the United States has waived its sovereign immunity, the scope of that waiver is determined by federal, not state law. *United States v. Lewis County,* 175 F.3d 671, 676 (9th Cir.1999). It is possible, of course, that in its waiver, Congress may indicate that the state rather than the federal rule of decision shall apply. *Reconstruction Finance Corp. v. Beaver County,* 328 U.S. 204, 208, 66 S.Ct. 992, 90 L.Ed. 1172 (1946).

For example, in *Beaver County,* Congress consented to local taxation of certain federally owned real property. The issue at hand, was whether the county was permitted to tax heavy factory machinery, because under state law such property would be defined as real property. The Supreme Court reasoned that, Congress' stated purpose would best be ac-

complished by defining real property under state law guidelines. *Id.* at 210, 66 S.Ct. 992. The Supreme Court reached this conclusion, in part, because "[c]oncepts of real property are deeply rooted in state traditions, customs, habits, and laws." *Id.* In contrast, as the Ninth Circuit noted in *Lewis County,* where a strong federal interest is in question, it is doubtful that Congress intended the outcome to depend upon varying characterizations of state law.

In addition, the Supreme Court has repeatedly held that waivers of sovereign immunity must be strictly construed in favor of the sovereign. *Lewis County,* 175 F.3d at 677, *citing United States v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Here, there is no such indication that by adoption of § 3720(a)(1), Congress intended to *sanction* the use of state non-judicial foreclosure proceedings to sell property owned by the VA.

fore, the VA requests the Court to find that federal law takes precedence over state law on this issue.

### 1. *This Issue Is Governed By Federal Law*

█ Under the Property and Supremacy Clauses of the United States Constitution, federal law governs the determination of whether title to land owned by the United States has passed to another party.

█ The Property Clause of the Constitution provides that "[t]he Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belong[ing] to the United States..." U.S. Const., Art. IV, Sec. 3, cl. 2. The term "property" under the Property Clause has been defined to include "all other personal and real property rightfully belonging to the United States." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 331, 56 S.Ct. 466, 80 L.Ed. 688 (1936). Congress' power to act under the Property Clause is "without limitations." *Kleppe v. New Mexico*, 426 U.S. 529, 539, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). The Supreme Court has consistently championed the federal government's right to determine the fate of its own property. "The power of Congress to dispose of any kind of property belonging to the United States 'is vested in Congress without limitation' " *Alabama v. Texas*, 347 U.S. 272, 273, 74 S.Ct. 481, 98 L.Ed. 689 (1954) (per curiam). It is Congress' right to determine to whom the property will be sold and under what conditions. *Van Brocklin v. Anderson*, 117 U.S. 151, 167, 6 S.Ct. 670, 29 L.Ed. 845 (1886). Property owned by the United States, for reasons of public policy, "cannot be seized by authority of another sovereignty against the consent of the Government." *Armstrong v. United States*, 364 U.S. 40, 43, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). There is no legal basis for finding that the law would be different as against a private individual or company rather than another sovereign.

*Utah Power & Light Co. v. United States*, 243 U.S. 389, 408–09, 37 S.Ct. 387, 61 L.Ed. 791 (1917) (examining a private company's claims of ownership of government land under the Property Clause).

█ When Congress acts pursuant to its power under the Property Clause, all regulations necessarily take precedence over any state or local laws. This is, of course, the rule under the Supremacy Clause of the Constitution. The Supremacy Clause, in pertinent part, states that: "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ... shall be the supreme Law of the land; and the Judges in every State shall be bound thereby...." U.S. Const. Art. VI, cl. 2. The purpose of the Supremacy Clause:

> was to avoid the introduction of disparities, confusions and conflicts which would follow if the government's general authority were subject to local controls. The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any state. *United States v. Allegheny County*, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209 (1944).

█ The Supreme Court has held that a

> state has an-undoubted right to legislate as she may please in regard to the remedies to be prosecuted in her Courts, and to regulate the disposition of the property of her citizens by descent, devise, or alienation. But the property in question was a part of the public domain of the United States: Congress is invested by the Constitution with the power of disposing of, and making needful rules and regulations respecting it. *Wilcox v. Jackson*, 38 U.S. 498, 516, 13 Pet. 498, 10 L.Ed. 264 (1839).

Unless the federal government acts, title does not pass under the laws of the United States. If a state were able to pass laws that could dispose of federal lands, "[t]hat would make the laws of [the state] paramount to those [of] Congress.... And the practical result in this very case would be, by force of state legislation to take from the United States their own land, against their own will, and against their own laws." *Id.* at 517, 13 Pet. 498. As is clear from the cases cited above, federal land is to be treated differently than land held by private individuals. This is so, even when the federal government holds the land in the same capacity as an individual, as it does here. Plaintiff Yunis and Sky Meadow effectively argue that even though a state or local government cannot "convey absolute title in derogation of the federal interest," a private homeowners association can do so when it non-judicially forecloses on the federal government's interest in the property. *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir.1979). This is untenable. In order for a state or a private company to proceed in such a manner there must be express congressional approval. *Id.*

> Under the Supremacy Clause of the Constitution state legislation must yield ... to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs.... In this manner, the Supremacy Clause seeks to avoid the introduction of the disparity, confusion and conflict which would follow if the Government's general authority is subject to local controls. *Allegheny County*, 322 U.S. at 183, 64 S.Ct. 908.

Title to United States' property can be divested only by an Act of Congress. *Beaver v. United States*, 350 F.2d 4, 8 (9th Cir.1965).

In *Utah Power*, the Supreme Court considered whether a private company had acquired rights to various public lands. The company had been using the land to generate and distribute electrical power. Just as Sky Meadow has argued, the company claimed that the Court should look to state law to determine whether it was in the right. The Court rejected this argument, stating that, under the power of the Property Clause, only through an act of Congress can government land rights be acquired. *Utah Power*, 243 U.S. at 404, 37 S.Ct. 387.

The Supreme Court has determined that just as states cannot act to take away the property of the federal government, without congressional consent, neither can private individuals. *United States v. Ansonia Brass & Copper Co.*, 218 U.S. 452, 471, 31 S.Ct. 49, 54 L.Ed. 1107 (1910) (property "intended for public use could not be seized under state laws to answer the claim of a private person, however meritorious.") *Id.*

This principle is reflected in the Ninth Circuit's decision in *Rust v. Johnson*. There, the City of Los Angeles sought to enforce its right of *non-judicial foreclosure* to dispose of property in which the federal government had an interest. The Circuit held that a mortgage interest retained by the Federal National Mortgage Association was a federal property interest. *Rust*, 597 F.2d at 179. The city's attempt to foreclose on the property without seeking to protect the federal property interest, was improper. *Id.* In absence of express congressional authority, the Supremacy Clause barred the foreclosure sale.

The Court recognizes that Sky Meadow, as a homeowners association has a legitimate need to collect the assessment fees to maintain the common areas. The Court simply concludes that its resort to a non-judicial foreclosure sale of property owned by the United States is improper. *Id.* at 179.

 In sum, the Supreme Court has resolved the heart of the case before us, "We hold the true principle to be this, that whenever the question in any Court, state

or federal, is, whether a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States...." *Wilcox,* 38 U.S. at 517, 13 Pet. 498.

## 2. *The Applicable Rule Of Decision Is Federal Rather Than State Law*

■ When Congress has not spoken, it is up to the "federal courts to fill the [void] ... 'according to their own standards' " *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727, 99 S.Ct. 1448, 59 L.Ed.2d 711. Establishing that federal law will determine what law applies to this case, does not end the matter. The Court must decide whether to fashion a federal rule of decision to be nationally applied or to defer to state law as the federal rule of decision. Courts have, on some occasions, found that state law should be the federal rule of decision in determining whether the federal government's interest in its property could be subordinated or extinguished. *See e.g. United States v. Brosnan,* 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); *United States v. Cless,* 254 F.2d 590 (3rd Cir.1958).

The Supreme Court, in *United States v. Kimbell Foods, Inc.,* found that often, the "prudent course is to adopt the ready-made body of state law as the federal rule of decision until Congress strikes a different accommodation." Courts have deferred to state law when recognition of a new federal rule of decision would unduly disrupt long established state property laws. In these cases, the courts have determined that a uniform federal practice is not required. *Id.* at 727–28, 99 S.Ct. 1448.

The present case, however, does require a uniform federal practice. It is doubtful, here, that Congress in enacting the VA Home Loan Guaranty Program, intended "the outcome to depend upon varying characterizations of state law." *United States v. Lewis County,* 175 F.3d 671, 677 (9th Cir.1999) *cert. denied* — U.S. —, 120 S.Ct. 525, 145 L.Ed.2d 407 (1999).

Sky Meadow is correct that in several instances, the Supreme Court has determined that the appropriate federal rule of decision should be state law.[7] As the Supreme Court noted, leaving the decision to the federal courts to lead where Congress has not, does not necessarily require a uniform federal practice. *Id.* at 727–28. In *Kimbell Foods,* the Supreme Court held that in determining which lien takes precedence, state law applies. The Supreme Court reached this conclusion by noting that the Small Business Administration and the Farmer's Home Administration would in no way be hindered by this rule. Among the reasons for its decision, the Court cited the fact that these agencies sponsored voluntary lending programs, that compliance with state law placed no burden on them (as they had already incorporated many aspects of state law in their lending manuals), that they individually negotiated each loan so customization was not a problem, and that the government assumes the risk when it makes individual loans. *Id.* at 729–36, 99 S.Ct. 1448.

Although *Kimbell Foods* has many similarities to the case at hand, particularly the fact that it involved government lending programs, there are several important distinctions. First, while both cases involve federal lending programs, the relative positions of the agencies are vastly different. In the present case, the technicalities of the lending program are not at issue. Here, a private lender loaned money to an eligible veteran, the veteran borrower defaulted, the lender foreclosed and, the VA ultimately acquired the property and reimbursed the lender for its loss as it was required to do under the Home Loan

---

7. Two of the cases cited by Sky Meadow in support of this argument, *United States v. Brosnan,* 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960) and *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), involve federal lien rights, not property actually owned by the federal government. This is an important distinction when examining whether or not application of state law would frustrate the purpose of a federal program.

Guaranty Program. Thus, we are concerned with the role of the government as a property owner and not whether its lien rights should take precedence over other creditors. It is in this context that the Court must decide whether to apply federal or state law as the federal rule of decision. In these circumstances, the most relevant consideration is the gravity of the federal interest which the Ninth Circuit has found in a similar circumstance, necessitates the application of federal law. *Lewis County*, 175 F.3d at 677.

Second, the government has correctly noted that there is a significant difference between the government's posture in *Kimbell* and here, as the creditors in *Kimbell* had no ability to sue the government to collect their debts, if the federal government's liens rendered the creditor liens less valuable. (VA Opp. to Coast Mot. at 6, n. 4.) Here, the VA concedes that Coast Assessment and Sky Meadow could have sued the United States under the "sue and be sued" clause found in the statute and collected the assessment fees. 38 U.S.C. § 3720(a)(1).

Most importantly, the Ninth Circuit has expressly held that *Kimbell Foods* is not applicable in the case of foreclosure sales of federally owned land. *Lewis County*, 175 F.3d at 676. In *Lewis County*, the Ninth Circuit considered whether a state could properly tax federal lands, pursuant to an express grant of such power to the states, and whether, if such taxes were appropriate, the state could foreclose on the federal property for non-payment of taxes. The federal government acquired ownership of the land under a loan program administered by the Farm Service Agency, an agency of the Department of Agriculture.[8] By a specific act of Congress, the property acquired was subject to state and local taxes in the same manner that other non-federal property was taxed. *Id.* at 674.

Sky Meadow argues that because *Lewis County* involved a judicial foreclosure action and was hence, a suit against the United States without its consent, the case is inapplicable. (Sky Meadow's Opp. at 11–12.) The Court disagrees. This argument relates to the doctrine of sovereign immunity and not what rule of decision should apply to this case. The issue in *Lewis County* was whether such property could be subject not only to taxation but to interest and penalties, including a judicial foreclosure sale of the property by the county upon the federal government's failure to pay taxes. The Circuit held that the statute's express consent to taxation did not extend to the imposition of interest and penalties and that a foreclosure action against federally owned land was a suit against the federal government and could not be prosecuted without its consent. *Id.* at 677–78.

The Circuit held that state law should not be determinative where a federal interest is paramount as in the case of a foreclosure proceeding against government owned property or imposition of interest and penalties for late payment. *Id.* at 677. Whether it was a judicial or non-judicial foreclosure sale is irrelevant, the government's interest is that it not lose its property, regardless of how the loss occurs. *Id.* at 677. Thus, what is critical in the context of a national federal program like the VA Home Loan Guaranty Program, is that the United States not lose its property irrespective of whether the sale occurs through a judicial foreclosure sale or a private non-judicial foreclosure proceeding authorized by state law.

In *Lewis County*, the Ninth Circuit recognized that foreclosing on federally owned property interfered with the statutory mission of a federal government agency—the Farm Service Agency. Under the statute, the agency was required to offer the forfeited land to other qualified farmers. The county was under no such obli-

---

8. The Farm Service Agency lends money to farmers and ranchers unable to obtain loans elsewhere. 7 U.S.C. § 1922. If the farmer defaults, the agency may acquire title to the land. 7 U.S.C. § 1985(a).

gation and could therefore frustrate Congress' stated legislative purpose.

In addition to the Ninth Circuit's holding in *Lewis County*, a district court in South Carolina has also determined that foreclosing on federal property raises unique issues of federal law. In *United States v. County of Richland*, 500 F.Supp. 312 (D.S.C.1980), a county foreclosed upon a Housing and Urban Development ("HUD") owned property, for taxes owed prior to HUD's acquisition of the property. The district court held that the foreclosure sale was void. *Id.* at 317.

The county in *Richland* argued that because it was specifically permitted to tax HUD owned properties under federal law, via an express congressional waiver, it should be entitled to sell the land for failure to pay taxes. The district court disagreed stating that "[t]o subject the property of the United States to levy and sale would require a specific waiver" in addition to the waiver regarding the ability to tax the property. *Id.* at 315.

The district court in *Richland* found that in permitting the county to foreclose on HUD's property it might "substantially impair[ ] the Government's participation in the home mortgage market and . . . defeat[ ] the purpose of the National Housing Act."

As is clear from *Lewis County* and *Richland*, whether or not the application of state law would interfere with a program's governmental purpose is a central aspect in the analysis. In both *Lewis County* and *Richland* the courts determined that a uniform federal policy was necessary to further Congress' intent in establishing the particular federal program. In the present case, the non-judicial foreclosure sale interferes with the objectives of the VA Home Loan Guaranty Program. Here, the government argues that if it does not receive quiet title to the property it will suffer a net loss to the Veterans Housing Benefit Program Fund; a critical component of the Home Loan Guaranty Program. Barring additional congressional funding, a foreclosure sale of the VA's property will frustrate the purpose of the program, i.e. to guaranty home loans on behalf of eligible veterans to enable them to purchase a home. Because application of state law as the federal rule of decision would interfere with the statutory mission of the VA, the Court must apply federal law in order to achieve a uniform federal rule of decision.[9]

Just as the Ninth Circuit concluded in *Rust*, the Court concludes that permitting a private entity to sell property owned by the federal government hinders the government's purpose in owning the property in the first place. The purpose of the VA Home Loan Guaranty Program, is to permit otherwise ineligible veterans to own a home. If the VA is circumscribed in its ability to replenish the Veterans Housing Benefit Program Fund, then its ability to facilitate home ownership by eligible veterans is then limited.[10]

---

**9.** Sky Meadow argues that the present case is distinguishable from *Lewis County* and *Richland* as it involves non-judicial foreclosure. In both *Lewis County* and *Richland*, as well as most of the cases cited by the VA, the cases involved an actual lawsuit against the federal government. In *United States v. Brosnan*, the Supreme Court held that a private non-judicial foreclosure sale under California law was not a "suit" against the United States. The Court stated that it did "not think that the doctrine of sovereign immunity reach[ed] so far." *United States v. Brosnan*, 363 U.S. 237, 250, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960).

Regardless of the sovereign immunity issue, it is sufficient under the Supremacy Clause that the non-judicial foreclosure sale interfered with the government's property rights. While a non-judicial foreclosure sale is not a suit against the government, the end result, i.e. the taking of property from the government without its consent, interferes with the government's property rights by definition. Additionally, in *Rust*, the Ninth Circuit makes it clear that where a non-judicial foreclosure sale interferes with the government's rights under the Property Clause, the sale is void.

**10.** In *Burroughs v. Hills*, 564 F.Supp. 1007, 1017 (N.D.Ill.1983) *aff'd* 741 F.2d 1525 (7th Cir.1984), the district court held that a private party could not sue HUD for hazardous conditions on its property, primarily because such actions would negatively impact the ability of HUD to fulfill its legislative mandate of

▮ Having established that the Court must apply a uniform federal rule of decision, the question remains what rule should be applied. Because Congress has not expressly spoken on this issue, the Court must "fashion the governing rule of law according to [federal court] standards." *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 318 U.S. 744, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (establishing the *Clearfield* doctrine which controls how federal courts are to rule when there is no congressional mandate); *see also Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640–41, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (holding that the rights and obligations of the United States are an appropriate area for federal common law). In formulating the appropriate federal rule of decision the Court looks to the purpose behind the congressional act at issue, namely to facilitate home ownership for eligible veterans.

Congress has the power to determine the conditions upon which property of the United States is sold or otherwise disposed. *Butte City Water Co. v. Baker*, 196 U.S. 119, 126, 25 S.Ct. 211, 49 L.Ed. 409 (1905). An individual or entity, may not dispose of federally owned property unless Congress has conferred, expressly or implicitly, such power. *Id.; see also Royal Indemnity Co. v. United States*, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941) (subordinate officers of the IRS lacked statutory authority to release tax bond); *Utah Power & Light Co.*, 243 U.S. at 404, 37 S.Ct. 387 (holding that state law of eminent domain is not applicable to federal land except as adopted or made applicable by Congress). In the VA loan guaranty statutory scheme, Congress has stated that the VA is required to sell acquired properties for the highest price as quickly as possible and to return the funds received to the Veterans Housing Benefit Program Fund. 38 U.S.C. § 3733(d). The statutory scheme is clear: only the VA may sell property acquired under the VA Home Loan Guaranty Program.

providing affordable housing. A similar con-

▮ In conclusion, for the reasons stated above, the Court holds that the congressionally mandated policy, that only the VA may dispose of its own property, is the appropriate federal rule of decision that should be applied in this case. As state law is not applicable, the non-judicial foreclosure sale of the VA property located at 5981 Sky Meadow Street, Riverside, California, is void and the VA is entitled to a judgment quieting title in the subject property in its favor.

## B. Remaining Issues

In granting the government's motion for partial summary judgment, the Court leaves unresolved what relief several of the parties might be entitled to against the VA or against each other. In earlier status conferences with the parties it was suggested that resolution of the critical issue, i.e. whether Sky Meadow could properly initiate foreclosure proceedings against property acquired by the United States under the VA Home Loan Guaranty Program, would allow the parties to resolve peripheral issues, such as payment of all past due assessment fees by the VA and what rights, if any, subsequent purchasers or secured parties may have in the subject property. The Court recognizes that final resolution of this case and the other related cases may well depend on whether the Court's analysis can withstand appellate review. Thus, it appears that it would be in the interest of all parties that the Court order entry of a partial judgment under Fed.R.Civ.P. 54(b) so that the Court's decision can be appealed to the Ninth Circuit.

The Court orders the parties to appear for a status conference to discuss entry of a partial judgment under Fed.R.Civ.P. 54(b) consistent with the views expressed in this Order. If the parties and the Court determine that entering a partial judgment is the most efficient and beneficial way to proceed, then the Court need not resolve, at this time, whether counterdefendant Angell is a "bona fide purchaser" and if so

cern applies here.

whether such status would affect the government's right to a quiet title judgment against Angell. Given the Court's ruling, Angell's status as a bona fide purchaser, assuming he qualifies as such, may be of no consequence.

## V.

### *Conclusion*

For the reasons given above, the government's motion for partial summary judgment quieting title in its favor is **GRANTED** and Sky Meadow and Coast Assessment's motion is **DENIED**. It is further ordered that the parties appear for a status conference on August 10, 2000 at 1:30 p.m. in courtroom 850 at the Roybal Federal Building. At least 5 days prior to the status conference the parties shall submit a status report regarding further proceedings and, in an attempt to expedite this matter, the government shall submit a proposed form of judgment under Fed. R.Civ.P. 54(b).

**IT IS SO ORDERED.**