175 F.3d 671
 99 Cal. Daily Op. Serv. 2814, 1999 Daily
Journal D.A.R. 3649
UNITED STATES of America, Plaintiff-Appellant-Cross-Appellee,
v.
LEWIS COUNTY, WA; Bill Brooks, County Assessor, Lewis
County, Washington; Donna Karvia, Clerk, Lewis County
Superior Court; Joe Cooke, Treasurer, Lewis County,
Washington; Gary Zandel, Defendants-Appellees,
and
Kevin E. Murphy; Bernice Murphy,
Defendants-Appellees-Cross-Appellants.
 Nos. 97-35510, 97-35720.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 7, 1998.
Decided April 19, 1999.
 
 David English Carmack, Bridget M. Rowan, Tax Division, United States Department of Justice, Washington, D.C., for plaintiff-appellant-cross-appellee.
 Douglas E. Jensen, Office of the Prosecuting Attorney, Chehalis, Washington, for defendants-appellees.
 Christopher M. Constantine, Tacoma, Washington, for defendants-appellees-cross-appellants.
 Appeals from the United States District Court for the Western District of Washington; Franklin D. Burgess, District Judge, Presiding. D.C. No. CV-94-05474-FDB.
 Before: CANBY and TASHIMA, Circuit Judges, and TAKASUGI,[1] District Judge.
 CANBY, Circuit Judge:
 
 
 1
 A federal statute, 7 U.S.C. § 1984, partially waives the immunity of the federal government from state taxation by authorizing state and local governments to tax farm property owned by the federal Farm Service Agency ("FSA") "in the same manner and to the same extent as other property is taxed." Id. Lewis County, Washington, imposed taxes, interest and penalties upon twenty parcels of farm property acquired by the FSA, and foreclosed on one of the parcels. The United States filed this action in district court, challenging these actions of the County. The United States contends that, because the County does not tax a comparable state agency, its tax is discriminatory and does not meet the requirements of § 1984 that the federal property be taxed "in the same manner and to the same extent as other property." Id. The United States also argues that, in any event, § 1984 does not authorize the County to collect interest and penalties, or to foreclose in the event of delinquency. The United States also disputed the County's application of a higher nonagricultural tax rate to three of the parcels. The United States now appeals from the district court's judgment for the County on the pleadings, entered pursuant to Fed. R. Civ. Pro. 12(c). We review de novo. See McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir.1996). We conclude that Lewis County may tax the FSA properties in issue, but that it may neither impose interest and penalties nor foreclose on those properties. We also conclude that the United States may challenge the imposition of the higher non-agricultural tax rate on the ground that it discriminates against the United States. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.
 
 
 2
 The United States named Kevin and Bernice Murphy as co-defendants because they had purchased an FSA parcel from Lewis County during a tax foreclosure sale. As cross-appellants, the Murphys seek to strike the declaration of a witness and obtain attorneys fees. They also assert affirmative defenses in their cross appeal. We do not rule upon most of the Murphys' contentions because they are improperly or prematurely raised.
 
 BACKGROUND
 
 3
 The FSA, an agency of the Department of Agriculture, lends money to farmers and ranchers unable to obtain loans elsewhere.[2] 7 U.S.C. § 1922 (1988 and Supp.1998). The agency may acquire title to property securing a particular loan if the borrower defaults. 7 U.S.C. § 1985(a). Title 7 U.S.C. § 1984 provides that:
 
 
 4
 All property ... the title to which is acquired or held by the Secretary under this chapter other than property used for administrative purposes shall be subject to taxation by State, territory, district, and local political subdivisions in the same manner and to the same extent as other property is taxed....
 
 
 5
 Thus, state and local authorities may apply a nondiscriminatory tax to property acquired by the FSA through loan default.
 
 
 6
 Lewis County assessed property taxes against twenty parcels of farmland held by the FSA. The FSA initially refused to pay the taxes, as well as the related interest and penalties. The FSA also objected to the County's taxation of three of the parcels at a higher nonagricultural rate. The County then initiated foreclosure actions against the parcels. Under protest, the FSA paid the taxes, penalties, and interest with regard to nineteen of the parcels in order to pass clear titles to eligible buyers. The County foreclosed on the remaining parcel and the Murphys purchased it at the foreclosure sale.
 
 
 7
 The United States then sued for damages and declaratory relief. The district court dismissed the complaint for lack of jurisdiction pursuant to the Tax Injunction Act, 28 U.S.C. § 1341 (1993). This court reversed in an unpublished decision and remanded for a consideration of the substantive issues. United States v. Lewis County, 94 F.3d 654 (9th Cir.1996)(Table). On remand, the Murphys and the County moved for judgment on the pleadings. The district court granted the motion, reasoning that 7 U.S.C. § 1984 provided a broad waiver of the federal government's immunity from state and local taxation with regard to agricultural property acquired by the FSA.DISCUSSION
 
 I. Taxation of FSA Property
 A. 7 U.S.C. § 1984
 
 8
 Washington's property tax scheme exempts from taxation "[a]ll property belonging exclusively to the United States, the state, any county or municipal corporation." Wash. Rev.Code § 84.36.010 (1991). The state's tax scheme also provides that, notwithstanding § 84.36.010, federally owned property is taxable whenever authorized by federal law. See id. § 84.40.315.[3] Thus, property acquired by the FSA through loan default is taxable pursuant to 7 U.S.C. § 1984.
 
 
 9
 The United States emphasizes that all state and local government property in Washington is tax-exempt, including property acquired by the Washington State Housing Finance Commission ("Housing Commission"). The Housing Commission performs a mission that is similar to the mission of the FSA. The United States then points out that Lewis County may tax FSA property only "in the same manner and to the same extent as other property is taxed." 7 U.S.C. § 1984. It insists that property acquired by Washington's Housing Commission is the relevant "other property." It reasons that, because Lewis County may not tax property held by the Housing Commission, or any other state or local government property, the County may not tax property held by the FSA. Thus, the United States would construe "other property" as "other publicly held property."
 
 
 10
 We do not read "other property" so narrowly. Congress must have known that states uniformly exempt state and local property from taxation. See Van Brocklin v. Tennessee, 117 U.S. 151, 173-75, 6 S.Ct. 670, 29 L.Ed. 845 (1886). If we construe 7 U.S.C. § 1984 to subject FSA property to taxation only where state and local government property is also taxed, then the waiver would rarely (if ever) take effect. By enacting 7 U.S.C. § 1984, however, Congress plainly intended to preserve the local tax base in counties where the FSA operates. We decline to interpret the provision in a way that would frustrate the obvious intent of Congress. See Philbrook v. Glodgett, 421 U.S. 707, 713, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); United States v. Hynes, 20 F.3d 1437, 1442 (7th Cir.1994) (en banc). "Other property" must mean "other non-exempt property." Thus, Lewis County did not violate 7 U.S.C. § 1984 because it taxed FSA property just as it taxed other non-exempt property.[4]
 
 B. Intergovernmental Tax Immunity
 
 11
 The United States also invokes the general principle of intergovernmental tax immunity that prohibits discrimination against a state taxpayer because of that taxpayer's connection with the federal sovereign. See Davis v. Michigan Dep't of the Treasury, 489 U.S. 803, 816, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (citing Phillips Chem. Co. v. Dumas Indep. Sch. Dist., 361 U.S. 376, 383, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960)). The relevant inquiry in such cases is whether the inconsistent treatment is justified by significant differences between the class of persons or items taxed and the class that is not taxed. Id.
 
 
 12
 Washington's tax scheme undeniably discriminates between farmland that is held by the FSA and farmland that is similarly held by the state. State and local governments have traditionally exempted themselves from state and local taxation, however. See, e.g., Burr v. Boston, 208 Mass. 537, 538-39, 95 N.E. 208, 209-10 (1911). The state or local government would gain no revenue, and would incur some expense, by taxing itself. Taxation of federally owned property, however, does generate revenue for the state. It is possible that this distinction might not be sufficiently significant in the absence of congressional action because, in evaluating the difference in treatment, " 'the [federal] Government's interests must be weighed in the balance.' " Davis, 489 U.S. at 816, 109 S.Ct. 1500 (quoting Phillips Chemical, 361 U.S. at 385, 80 S.Ct. 474). Here, however, Congress has made its assessment of the federal interest in 7 U.S.C. § 1984 and, as we have already pointed out, that statute reflects an intent to prevent federal repossession from causing farm land to be removed from the state's tax rolls. Congress's action sufficiently qualifies the intergovernmental immunity of the United States to permit the state to make the distinction it has. We see no reason why state or local governments must engage in a circular process of taxing themselves in order to impose the tax on the federal government that Congress has authorized.
 
 
 13
 It is also worth noting that the County's tax on FSA-owned farmland is also imposed on privately-owned farmland in general. Thus there is a political check against excessive taxation. See South Carolina v. Baker, 485 U.S. 505, 525 n. 15, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988).
 
 
 14
 A "political check" is provided when a state tax falls on a significant group of state citizens who can be counted upon to use their votes to keep the State from raising the tax excessively, and thus placing an unfair burden on the Federal Government. It has been thought necessary because the United States does not have a direct voice in the state legislatures.
 
 
 15
 Washington v. United States, 460 U.S. 536, 545, 103 S.Ct. 1344, 75 L.Ed.2d 264 (1983). In the present case, Lewis County taxed private farmland to the same extent, and in the same manner, as it taxed FSA farmland.[5] See Wash. Rev.Code § 84.36.005. Excessive taxation of the United States is accordingly unlikely.
 
 II. Interest and penalties
 
 16
 The parties dispute whether federal or state law determines the extent of Congress's waiver of immunity from "taxation" in § 1984. We agree with the United States that the question of the scope of a congressional waiver of the federal government's immunity is one of federal law. See Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204, 208, 66 S.Ct. 992, 90 L.Ed. 1172 (1946) ("What meaning Congress intended [in its waiver] is a federal question which we must determine"). As Beaver County indicates, however, Congress may intend, as a matter of federal law, to apply a state rule. See also United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-28, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).
 
 
 17
 In Beaver County, the issue was whether Congress, in consenting to local taxation of certain federally-owned "real property," permitted Beaver County to tax heavy factory machinery because under state law such machinery was considered part of the factory real estate. The Supreme Court held that, the phrase being undefined by Congress, "the Congressional purpose can best be accomplished by application of settled state rules as to what constitutes 'real property.' " Beaver County, 328 U.S. at 210, 66 S.Ct. 992. Two circuits have held that the rule of Beaver County applies as well to the question whether interest and penalties were within § 1984's meaning of "taxation." See Federal Reserve Bank of Richmond v. Richmond, 957 F.2d 134 (4th Cir.1992); Reconstruction Finance Corp. v. Texas, 229 F.2d 9 (5th Cir.1956). The Fourth Circuit concluded that the Federal Reserve Bank must pay interest and penalties because Virginia law provided that those charges were taxes. Richmond, 957 F.2d at 137. The Fifth Circuit concluded that the Reconstruction Finance Corporation was not liable for those items because interest and penalties were no part of the tax under Texas law. Reconstruction Finance Corp. v. Texas, 229 F.2d 9, 11-12 (5th Cir.1956).
 
 
 18
 With all due respect, we disagree with the approach of the Fourth and Fifth Circuits. We do not read Beaver County so broadly. Its ruling that Congress intended "real estate" to be determined by state law was grounded in part on the Supreme Court's recognition that "[c]oncepts of real property are deeply rooted in state traditions, customs, habits, and laws." Beaver County, 328 U.S. at 210, 66 S.Ct. 992. In contrast, there is a strong federal interest in the question whether the United States should be subject to state-imposed interest, penalties and foreclosures, and we doubt that Congress intended the outcome to depend upon varying characterizations of state law.[6] We prefer the view of the Sixth Circuit, which held that the meaning of a waiver of immunity from state "taxes" was to be determined by federal law, notwithstanding Beaver County. See United States v. Consumers Scrap Iron Corp., 384 F.2d 62, 64-65 (6th Cir.1967); see also Missouri Pacific R. Co. v. Ault, 256 U.S. 554, 565, 41 S.Ct. 593, 65 L.Ed. 1087 (1921) (whether an award is compensation or is a penalty not included in a waiver of immunity is a question of federal, not state, law).
 
 
 19
 As a matter of federal law, there is a long tradition establishing that "in the absence of constitutional requirements, interest can be recovered against the United States only if express consent to such a recovery has been given by Congress.... There can be no consent by implication or by use of any ambiguous language." United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 659, 67 S.Ct. 601, 91 L.Ed. 577 (1947); see Library of Congress v. Shaw, 478 U.S. 310, 314-16, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). The same principle applies with at least equal force to penalties. See United States Dep't of Energy v. Ohio, 503 U.S. 607, 615, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992); Consumers Scrap, 384 F.2d at 65. The Supreme Court has also repeatedly stated that waivers of sovereign immunity must be strictly construed in favor of the sovereign. See United States v. Nordic Village, Inc., 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); McMahon v. United States, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951).
 
 
 20
 Applying these principles, we conclude that Congress has not waived the immunity of the United States from interest and penalties. The term "taxation" does not unequivocally include the assessment of interest and penalties. A closer question is whether immunity from interest and penalties is waived by the provision of § 1984 that FSA-held property is subject to taxation "in the same manner and to the same extent as other property is taxed." 7 U.S.C. § 1984. There is some force to the County's argument that this provision is a broad waiver intended to permit the states to apply their entire system of enforcement machinery against the United States, "in the same manner" as the states would apply that machinery against private taxpayers. See Beaver County, 328 U.S. at 210, 66 S.Ct. 992; but see Library of Congress v. Shaw, 478 U.S. 310, 319-20, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) ( "[s]tatutes placing the United States in the same position as a private party ... have been read narrowly to preserve certain immunities that the United States has enjoyed historically"). The difficulty with the County's approach is that, even though Congress could have entertained that intent, it did not express it unequivocally. The requirement that federally-held property be subject to taxation "in the same manner" as other property can refer to the time when the tax is due, the manner of valuation, or any number of other elements of the state taxing process other than the imposition of interest, penalties and foreclosure. This plausible interpretation is sufficient to render the meaning of the phrase "in the same manner" ambiguous and preclude us from accepting it as an unequivocal waiver of immunity from interest, penalties and foreclosure. See Nordic Village, 503 U.S. at 37, 112 S.Ct. 1011; Dep't of Energy v. Ohio, 503 U.S. at 619-20, 626-27, 112 S.Ct. 1627; see also Lane v. Pena, 518 U.S. 187, 116 S.Ct. 2092, 2100, 135 L.Ed.2d 486 (1996).[7]
 
 III. Foreclosure
 
 21
 Foreclosure against federally-owned property is a suit against the United States, which cannot be prosecuted without its consent. See United States v. Alabama, 313 U.S. 274, 282, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941). The district court concluded that 7 U.S.C. § 1984 empowered Lewis County to foreclose on FSA property on the ground that "taxation ... in the same manner" refers to the procedures for collecting taxes, which include foreclosure. For the reasons already discussed in the preceding section, we cannot accept that phraseology as an unequivocal waiver of immunity.
 
 
 22
 Foreclosure against FSA property would also interfere with the statutory mission of that agency. The FSA is required, for example, to offer forfeited property for resale to qualified farmers. See 7 U.S.C. § 1985(c)(1)(B). A state foreclosing for a tax debt is under no such compulsion, and thus might frustrate Congress's intent in imposing the restriction. Congress apparently did not contemplate any such possibility in enacting § 1984. See S.Rep. No. 566, 87th Cong., 1st Sess., reprinted at 1961 U.S.C.C.A.N. 2243, 2316 ("Property acquired in liquidation of loans is disposed of promptly, so that the incident of the tax does not greatly interfere with the resale of the property or the recovery of security value"). We conclude, therefore, that § 1984 does not waive the immunity of the United States from foreclosure of its property by the County.
 
 
 23
 It is true that the inability to foreclose impairs the County's ability to collect its tax. Such dislocations are not unknown when a taxing authority deals with another sovereign. See Oklahoma Tax Comm'n v. Potawatomi Tribe, 498 U.S. 505, 514, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). We assume, however, that, now that its liability for taxes (but not interest or penalties) has been established, the United States will pay its taxes when due. Payment of such taxes would seem to be a prerequisite to the ability to convey marketable title.
 
 
 24
 For these reasons, we reverse the judgment of the district court with respect to the County's foreclosure.[8]
 
 IV. Nonagricultural Tax Rate
 
 25
 Lewis County imposed a higher nonagricultural tax rate on three of the twenty FSA parcels for the 1994 tax year. The County also imposed a recapture tax on the ground that it should have applied the higher tax rate in previous years. The United States argued in its complaint that the higher tax rate was inappropriate because the parcels had remained agricultural. The district court did not address this claim.
 
 
 26
 In contrast to the question whether the United States is subject to interest, penalties, and foreclosure, the question whether the state properly characterized the land as agricultural must be determined according to state law. The issue falls directly within Beaver County. The congressional purposes behind § 1984 are best accomplished by "application of settled state rules" geared to state real-property concepts. Beaver County, 328 U.S. at 210, 66 S.Ct. 992. The only issue to be determined purely as a matter of federal law is whether the County has discriminated against the United States in the establishment or implementation of its rules. See id. We remand the claim concerning the non-agricultural tax rates to the district court for determination according to these standards.
 
 V. The Murphys' Cross-Appeal
 
 27
 In addition to joining many of the arguments of the County as appellees, the Murphys' cross-appeal from the district court's judgment. They claim that: (1) the district court erred in ruling on a motion to strike portions of certain declarations; (2) in the event of remand, they are entitled to relief on their counterclaim for cost of improvements to the property; (3) the United States failed to exhaust state administrative remedies and is barred by limitations from doing so now; and (4) they are entitled to attorneys fees under the Equal Access to Justice Act.
 
 
 28
 Claims (1) and (2) are not properly raised because the Murphys wholly prevailed in district court when the court granted judgment against the United States on the pleadings. A party who is not aggrieved by a judgment ordinarily may not appeal from it. See Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 333, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). The rulings challenged by the Murphys are not collateral matters that fall within an exception to this rule. See id. at 333-34, 100 S.Ct. 1166.[9]
 
 
 29
 For the same reason, claim (3) is not a proper subject of cross-appeal, although failure to exhaust can be raised in the main appeal as an alternative argument in support of the district court's judgment. See Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc., 810 F.2d 869, 874 (9th Cir.1987) ("We may affirm the district court on any ground supported by the record, even if the ground is not relied on by the district court"). With regard to the claims of the United States that the County violated its sovereign immunity or discriminated against the United States in violation of its intergovernmental immunity, the Murphys' contention is without merit. The United States need not exhaust state remedies before raising claims arising under federal law in district court. See 28 U.S.C. §§ 1331, 1345 (1993); Department of Employment v. United States, 385 U.S. 355, 357-58, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966); United States v. Broward County, 901 F.2d 1005, 1007-08 (11th Cir.1990). On the state-law question whether three parcels were properly classified as non-agricultural land, we prefer to have the district court rule in the first instance on the question of exhaustion and state limitations for exhaustion. We therefore leave that matter for disposition by the district court on remand, as the government concedes to be appropriate.
 
 
 30
 With regard to the Murphys' claim for attorneys fees, the issue is premature. The Equal Access to Justice Act provides for the award of fees to "a prevailing party ... unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). In light of our disposition of this appeal, the Murphys have not established themselves as a "prevailing party." Whether they prevail to any extent upon remand in a manner to require an award of fees is yet to be determined; the Murphys may renew their request in district court at the conclusion of further proceedings.CONCLUSION
 
 
 31
 Lewis County may tax property held by the FSA pursuant to 7 U.S.C. § 1984, even though Washington law exempts state and local government property (including that of the Housing Commission) from taxation. Congress did not waive federal sovereign immunity from state or local interest, penalties, and foreclosure with regard to FSA property in Washington. The Murphys' cross-appeal is without merit.
 
 
 32
 The parties will bear their own costs in these appeals.
 
 
 33
 No. 97-35510 (Main Appeal): AFFIRMED IN PART; REVERSED IN PART, and REMANDED.
 
 
 34
 No. 97-35720 (Cross-Appeal): AFFIRMED IN PART; DISMISSED IN PART.
 
 
 
 [1]
 The Honorable Robert M. Takasugi, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [2]
 The FSA succeeds the Farmers Home Administration, which Congress abolished in 1994. 7 U.S.C. § 6932 (Supp.1998). Although the events of this case span the reorganization of the agency, we will refer to the agency only as the FSA
 
 
 [3]
 A State may not directly tax the United States without the federal government's consent. See United States v. New Mexico, 455 U.S. 720, 733, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982)
 
 
 [4]
 We are not faced in this case with a contention that the state has established such a comprehensive system of exemptions that a grossly disproportionate share of the total tax burden falls on the United States. Our decision does not address such a situation
 
 
 [5]
 We address in Section IV, infra, the contention of the United States that the state has improperly taxed three of its farmland parcels at a higher, non-agricultural rate
 
 
 [6]
 We note, however, that if state law were determinative, the County would fare no better. The Washington Supreme Court has ruled that "[t]he provision exacting payment of interest for delinquency in the payment of taxes does not make the interest a part of the tax." Henry v. McKay, 164 Wash. 526, 533, 3 P.2d 145, 148 (1931). It treats penalties in the same fashion. See id.; cf. State ex rel. Kern v. Emerson, 90 Wash. 565, 572, 155 P. 579, 582 (1916). A Washington statute defines "tax" to include interest and penalties, but only for the purpose of an application for refund. Wash. Rev.Code § 84.69.010(2). That definition permits taxpayers to recover interest and penalties erroneously paid, but does not purport to characterize the nature of those impositions for other purposes
 
 
 [7]
 The Third Circuit permitted the imposition of civil penalties on the Postal Service without an unequivocal waiver, but in doing so the court distinguished the autonomous Postal Service from the government itself. Pennsylvania v. U.S. Postal Service, 13 F.3d 62, 67 (1993). The Third Circuit recognized that the United States had been held immune from penalties under the same statute in Dep't of Energy v. Ohio, supra
 
 
 [8]
 The Murphys assert that they are entitled to compensation for the improvements that they made to the property. We leave this question to the district court for consideration on remand
 
 
 [9]
 Claim (2) is also premature to the extent that it addresses matter to be determined on remand