SECRETARY OF HOUSING AND URBAN DEVELOPMENT, Plaintiff,

v.

SKY MEADOW ASSOCIATION; a California Nonprofit Corp.; Coast Assessment Service Company, a California Corp.; Mark L. Morger; and Shane E. Erwin, Defendants.

Shane E. Erwin, Counterclaimant,

v.

Secretary of Housing and Urban Development, and Does 1 through Does 10, inclusive Counterdefendants.

No. CV 98–1842 RAP.

United States District Court, C.D. California.

July 24, 2000.

---

Leon W. Weidman, Suzanne L. Bell, Asst. U.S. Atty., Office of U.S. Atty., Civ. Div., Los Angeles, CA, for Secretary of Housing and Urban Development.

Kyle Kveton, Kim W. Sellars, Robie & Mattai, Los Angeles, CA, for Sky Meadow Association.

Michael D. May, Michael May Law Offices, Anaheim, CA, for Coast Assessment Service Co., Mark L. Morger.

Stuart B. Wolfe, Stanley Ratcliffe Escalante, Wolfe & Wyman, Irvine, CA, for Shane E. Erwin.

## ORDER GRANTING GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

RICHARD A. PAEZ, Circuit Judge, Sitting by Designation.

### I.

### *Introduction*

In this case, the Secretary of Housing and Urban Development ("HUD"), seeks to quiet title in property it acquired under the Single Family Mortgage Insurance Program, but that was subsequently sold through a private non-judicial foreclosure sale initiated by defendant Sky Meadow Association ("Sky Meadow") when HUD failed to pay homeowner association assessment fees. HUD maintains that although the foreclosure sale was authorized by Sky Meadow's Declaration of Covenants, Conditions, and Restrictions ("CC & R's") and state law, Sky Meadow is precluded by the Property and Supremacy Clauses of the Constitution from initiating foreclosure proceedings against property owned by the United States. Defendant's argue that because the sale was authorized by the CC & R's, state law and sanctioned by federal law, the trustee's sale terminated HUD's rights to the property.

The Court addressed this issue in *Yunis v. United States,* 118 F.Supp.2d 1024, in its Order granting the United States' motion for partial summary judgment. Although, the non-judicial foreclosure sale in that case involved property acquired by

the VA under its Loan Guaranty Program, the critical legal issues are identical. In *Yunis,* the Court agreed with the United States that its property could not be sold through a non-judicial foreclosure proceeding to collect homeowner association assessment fees without specific congressional authorization. Finding no such authorization, the Court concluded that such a sale violated the Constitution's Property and Supremacy Clauses and voided the sale. Although the factual context is different and this case involves a subsequent sale to defendant Shane E. Erwin ("Erwin"); the Court, applying the same legal analysis as in *Yunis,* reaches the same result here.

Because the Court has not consolidated these cases and for the convenience of the parties, the Court repeats its legal analysis here, in full, with minor revisions to reflect the factual context of this case.

Because there are no factual disputes regarding HUD's failure to pay assessment fees and the events leading up to the foreclosure sale, the legal issue raised by HUD, i.e. whether the Supremacy and Property Clauses of the Constitution preclude the use of non-judicial foreclosure by a private party to sell property owned by the United States in order to satisfy a debt it admittedly owes, is ripe for partial summary judgment. Upon consideration of the parties' cross motions for partial summary judgment and summary judgment, the Court has concluded, for the reasons set forth below, that HUD's motion should be **granted** and that the cross-motions by defendants should be **denied.**[1]

### II.

### *Factual Background*

In 1987, HUD insured a home loan made by PNC Bank, a private lender, to

---

1. Defendant Sky Meadow and defendant Coast Assessment Service Company ("Coast Assessment"), joined by defendant Mark Morger ("Morger"), filed motions for partial summary judgment and summary judgment, respectively, asserting that HUD's rights to the

property had been extinguished. Similarly, arguing that HUD's interest in the property has been extinguished, defendant Erwin has filed a cross motion for summary judgment seeking to quiet title in himself.

Jerome and Geraldine Gomes to facilitate their purchase of a residence located at 5994 Sky Meadow Street, Riverside, California. The Gomes subsequently defaulted, PNC Bank foreclosed and was the successful bidder at a January 11, 1996 non-judicial foreclosure sale.

On January 22, 1996, PNC Bank recorded a grant deed transferring the property to HUD. Pursuant to HUD regulations, PNC submitted to HUD a Single Family Application for Insurance Benefits claim form dated April 26, 1996. 24 C.F.R. § 203.65. Pursuant to the claim, HUD paid PNC $93,528.04. On July 6, 1996, HUD paid the bank an additional $2,853.80.

On April 12, 1996, Coast Assessment on behalf of Sky Meadow recorded a Notice of Delinquent Assessment against PNC Bank with respect to the HUD Property. Coast Assessment sent a copy of the Assessment to PNC and to the Gomes, but not to HUD.

On May 14, 1996, Coast Assessment recorded a Notice of Default and Election to Sell Under Assessment Lien and mailed copies to both PNC and HUD. The Notice stated that the property was owned previously by PNC and was now owned by HUD. The Notice noted the amounts owed by the respective parties during their periods of ownership.

On June 11, 1996, Coast Assessment faxed a ledger to HUD which sought payment for amounts owed during PNC's ownership of the property.

On September 3, 1996, Coast Assessment recorded a Notice of Trustee's Sale stating that a sale would be held on September 19, 1996. On September 19, 1996, Coast Assessment purported to sell the HUD property to its president, defendant Mark Morger, for $1,500. On September 20, 1996, Coast Assessment recorded a Trustee's Deed Upon Sale transferring the title to Morger. The fair market value of the property as of September 20, 1996 was $63,000.

Subsequently Morger sold the property to defendant Erwin for $63,000. On December 13, 1996, Morger recorded a grant deed transferring the property to Erwin. Defendant Erwin remains in possession of the property.

On September 10, 1997, HUD tendered a check to Sky Meadow for $1,166, the amount of all unpaid assessments during the time that both PNC and HUD owned the property. HUD continues to offer to pay all past due assessments.

HUD failed to pay the assessment fees on the property at issue because PNC failed to file a claim for payment of costs with a copy of the trustee's deed transferring the property to HUD. Because of the lender's delay, HUD was unaware that it owned the property. Once notified that it owns property, it is HUD's policy to investigate any unpaid property assessments. Given its large property inventory, HUD may not become aware that it owns a particular piece of property until an interested party makes an inquiry or files a complaint regarding the property. At the time HUD acquired the subject property its Santa Ana Field Office, which was charged with managing HUD owned property, had a staff of 16. That office sold 14,800 homes between 1996 and 1997. With the overwhelming volume of mail, temporary mail clerks often misdirected it. If HUD received a notice relating to certain property before it became aware that the property had been transferred to it, HUD employees would discard the notice.

Under the Single Family Mortgage Insurance Program, HUD insures mortgages issued by private lenders (commonly known as FHA insurance) on single family homes pursuant to a congressional mandate to make decedent housing available to all citizens. 12 U.S.C. § 1709. By insuring the mortgage, HUD encourages private lenders to make loans to individuals who would not otherwise qualify for a loan. This program substantially increases the number of low to moderate income families who can purchase a home. The regula-

tions implementing the program are found at 24 C.F.R. Part 203.

Under the FHA insurance program, if the borrower defaults, the private lender may foreclose and if the successful bidder, may convey the title to HUD. 24 C.F.R. §§ 203.355(a); 203.359(a). The lender (mortgagee) then submits an insurance claim, known as a Single Family Application for Insurance Benefits, for payment of its losses, as PNC did here. 24 C.F.R. § 203.65. HUD then disposes of the property pursuant to its property disposition program. 24 C.F.R. part 291.

HUD must sell and dispose of properties acquired under the Single Family Mortgage Insurance Program pursuant to federal guidelines. 12 U.S.C. § 1710(g); 24 C.F.R. § 291. The properties must be disposed of in a manner that expands home ownership opportunities, strengthens neighborhoods and communities, and ensures a maximum return to the mortgage insurance fund. 24 C.F.R. § 291.1(a)(2). Under the National Housing Act, the Secretary of HUD is authorized to establish a Mutual Mortgage Insurance Fund in order to pay claims to mortgagees (private lenders) who have foreclosed on defaulted FHA-insured loans. HUD's ability to insure loans depends, to some extent, on its ability to sell acquired properties so that it can replenish the fund.

Thus the United States seeks a declaration that the Trustee's Deed upon Sale conveying the subject property to defendant Morger is void, and consequently the Grant Deed from Morger to defendant Erwin is also void. HUD recognizes, however, that were the Court to grant it relief, the United States would be obligated to reimburse Morger for the amount he paid for the property ($1,500) and pay all past due assessment fees to Sky Meadow.

HUD acknowledges that its property is subject to state regulation to the extent that it is not inconsistent with federal law. It asserts, however, that the actions taken by Sky Meadow and its agents were in direct contravention of federal law and federal property rights.

At the outset, the Court recognizes and HUD does not dispute that it was HUD's and the private lender PMC Bank's own negligence in failing to pay the association assessment fees that prompted Sky Meadow to initiate foreclosure proceedings under the CC & R's. HUD employees' negligence, however, does not justify or validate a non-judicial foreclosure sale of property owned by the United States. To allow such a sale under state law in the context of this case would be detrimental to the national interest of providing eligible individuals with financial assistance in obtaining home loans from private mortgage lenders. Thus, the Court agrees with HUD that federal law should govern the outcome of this action, and the appropriate rule of decision is federal and not state law.

### III.

### *Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the bur-

den of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party can dispose of the moving party's case "by submitting affirmative evidence that negates an essential element of the nonmoving party's claim or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *High Tech Gays v. Defense Industrial Secur. Clearance Office,* 895 F.2d 563, 574 (9th Cir. 1990).

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 *citing Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. *Id.* at 252, 106 S.Ct. 2505. As the Supreme Court explained in *Matsushita,*

[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348.

To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, must set forth "such facts as would be admissible in evidence," and must show that the declarant or affiant is competent to testify concerning the facts at issue. Fed.R.Civ.P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

Summary judgment is not treated as "a disfavored procedural shortcut" but as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 *quoting* Fed.R.Civ.P. 1.

### IV.

### *Discussion*

**A. Governing Law**

▉ The crux of the defendants' argument is that state law permitted it to foreclose upon the assessment lien because HUD failed to pay delinquent assessments.[2] California Civil Code §§ 2924,

---

**2.** The defendants also argues that the United States has expressly consented to the application of state law under the statute's sue and be sued clause. 38 U.S.C. § 3720(a)(1). When the United States has waived its sovereign immunity, the scope of that waiver is determined by federal, not state law. *United States v. Lewis County,* 175 F.3d 671, 676 (9th Cir.1999). It is possible, of course, that in its waiver, Congress may indicate that the state rather than the federal rule of decision shall apply. *Reconstruction Finance Corp. v. Bea-*

*ver County,* 328 U.S. 204, 208, 66 S.Ct. 992, 90 L.Ed. 1172 (1946).

For example, in *Beaver County,* Congress consented to local taxation of certain federally owned real property. The issue at hand, was whether the county was permitted to tax heavy factory machinery, because under state law such property would be defined as real property. The Supreme Court reasoned that, Congress' stated purpose would best be accomplished by defining real property under state law guidelines. *Id.* at 210, 66 S.Ct. 992.

2924(b), 2924(c) permit a trustee's sale of property pursuant to a written contract. The government does not dispute that against any other party, Sky Meadow could properly collect unpaid assessment fees by foreclosing on the assessment liens. Additionally, HUD does not dispute that when it acquired the property it assumed the obligation under the CC & R's to pay assessment fees. The government maintains, however, that because it is the owner, federal law applies and Sky Meadow cannot sell federally owned property—only the federal government can sell or otherwise dispose of its own property. Therefore, HUD requests the Court to find that federal law takes precedence over state law on this issue.

1. *This Issue Is Governed By Federal Law*

■ Under the Property and Supremacy Clauses of the United States Constitution, federal law governs the determination of whether title to land owned by the United States has passed to another party.

■ The Property Clause of the Constitution provides that "[t]he Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belong[ing] to the United States..." U.S. Const., Art. IV, Sec. 3, cl. 2. The term "property" under the Property Clause has been defined to include "all other personal and real property rightfully belonging to the United States." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 331, 56 S.Ct. 466, 80 L.Ed. 688 (1936). Congress' power to act under the Property Clause is "without limitations." *Kleppe v.*

*New Mexico*, 426 U.S. 529, 539, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). The Supreme Court has consistently championed the federal government's right to determine the fate of its own property. "The power of Congress to dispose of any kind of property belonging to the United States 'is vested in Congress without limitation'" *Alabama v. Texas*, 347 U.S. 272, 273, 74 S.Ct. 481, 98 L.Ed. 689 (1954) (per curiam). It is Congress' right to determine to whom the property will be sold and under what conditions. *Van Brocklin v. Anderson*, 117 U.S. 151, 167, 6 S.Ct. 670, 29 L.Ed. 845 (1886).

■ Property owned by the United States, for reasons of public policy, "cannot be seized by authority of another sovereignty against the consent of the Government." *Armstrong v. United States*, 364 U.S. 40, 43, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). There is no legal basis for finding that the law would be different as against a private individual or company rather than another sovereign. *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408–09, 37 S.Ct. 387, 61 L.Ed. 791 (1917)(examining a private company's claims of ownership of government land under the Property Clause).

■ When Congress acts pursuant to its power under the Property Clause, all regulations necessarily take precedence over any state or local laws. This is, of course, the rule under the Supremacy Clause of the Constitution. The Supremacy Clause, in pertinent part, states that: "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance

The Supreme Court reached this conclusion, in part, because "[c]oncepts of real property are deeply rooted in state traditions, customs, habits, and laws." *Id.* In contrast, as the Ninth Circuit noted in *Lewis County*, where a strong federal interest is in question, it is doubtful that Congress intended the outcome to depend upon varying characterizations of state law.

In addition, the Supreme Court has repeatedly held that waivers of sovereign immu-

nity must be strictly construed in favor of the sovereign. *Lewis County*, 175 F.3d at 677, citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Here, there is no such indication that by adoption of § 3702(a)(1), Congress intended to sanction the use of state non-judicial foreclosure proceedings to sell property owned by HUD.

thereof; ... shall be the supreme Law of the land; and the Judges in every State shall be bound thereby...." U.S. Const. art. VI, cl. 2.

The purpose of the Supremacy Clause:

was to avoid the introduction of disparities, confusions and conflicts which would follow if the government's general authority were subject to local controls. The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any state. *United States v. Allegheny County*, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209 (1944).

The Supreme Court has held that a

state has an-undoubted right to legislate as she may please in regard to the remedies to be prosecuted in her Courts, and to regulate the disposition of the property of her citizens by descent, devise, or alienation. But the property in question was a part of the public domain of the United States: Congress is invested by the Constitution with the power of disposing of, and making needful rules and regulations respecting it. *Wilcox v. Jackson*, 38 U.S. 498, 516, 13 Pet. 498, 10 L.Ed. 264 (1839).

Unless the federal government acts, title does not pass under the laws of the United States. If a state were able to pass laws that could dispose of federal lands, "[t]hat would make the laws of [the state] paramount to those [of] Congress.... And the practical result in this very case would be, by force of state legislation to take from the United States their own land, against their own will, and against their own laws." *Id.* at 517.

■■■■] As is clear from the cases cited above, federal land is to be treated differently than land held by private individuals. This is so, even when the federal govern-

ment holds the land in the same capacity as an individual, as it does here. Defendants effectively argue that even though a state or local government cannot "convey absolute title in derogation of the federal interest," a private homeowners association can do so when it non-judicially forecloses on the federal government's interest in the property. *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir.1979). This is untenable. In order for a state or a private party to proceed in such a manner there must be express congressional approval. *Id.*

Under the Supremacy Clause of the Constitution state legislation must yield ... to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs.... In this manner, the Supremacy Clause seeks to avoid the introduction of the disparity, confusion and conflict which would follow if the Government's general authority is subject to local controls. *Allegheny County*, 322 U.S. at 183, 64 S.Ct. 908.

Title to United States' property can be divested only by an Act of Congress. *Beaver v. United States*, 350 F.2d 4, 8 (9th Cir.1965).

In *Utah Power*, the Supreme Court considered whether a private company had acquired rights to various public lands. The company had been using the land to generate and distribute electrical power. Just as defendants have argued, the company claimed that the Court should look to state law to determine whether it was in the right. The Court rejected this argument, stating that, under the power of the Property Clause, only through an act of Congress can government land rights be acquired. *Utah Power*, 243 U.S. at 404, 37 S.Ct. 387.

The Supreme Court has determined that just as states cannot act to take away the property of the federal government, without congressional consent, neither can pri-

vate individuals. *United States v. Ansonia Brass & Copper Co.*, 218 U.S. 452, 471, 31 S.Ct. 49, 54 L.Ed. 1107 (1910) (property "intended for public use could not be seized under state laws to answer the claim of a private person, however meritorious.") *Id.*

This principle is reflected in the Ninth Circuit's decision in *Rust v. Johnson.* There, the City of Los Angeles sought to enforce its right of *non-judicial foreclosure* to dispose of property in which the federal government had an interest. The Circuit held that a mortgage interest retained by the Federal National Mortgage Association was a federal property interest. *Rust*, 597 F.2d at 179. The city's attempt to foreclose on the property without seeking to protect the federal property interest, was improper. *Id.* In absence of express congressional authority, the Supremacy Clause barred the foreclosure sale.

The Court recognizes that the homeowners association has a legitimate need to collect the assessment fees to maintain the common areas. The Court simply concludes that its resort to a non-judicial foreclosure sale of property owned by the United States is improper. *Id.* at 179.

In sum, the Supreme Court has resolved the heart of the case before us, "We hold the true principle to be this, that whenever the question in any Court, state or federal, is, whether a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States . . . ." *Wilcox*, 38 U.S. (13 Pet.) at 517.

### 2. *The Applicable Rule Of Decision Is Federal Rather Than State Law*

When Congress has not spoken, it is up to the "federal courts to fill the [void] . . .

'according to their own standards'" *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727, 99 S.Ct. 1448, 59 L.Ed.2d 711. Establishing that federal law will determine what law applies to this case, does not end the matter. The Court must decide whether to fashion a federal rule of decision to be nationally applied or to defer to state law as the federal rule of decision. Courts have, on some occasions, found that state law should be the federal rule of decision in determining whether the federal government's interest in its property could be subordinated or extinguished. *See e.g. United States v. Brosnan*, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); *United States v. Cless*, 254 F.2d 590 (3rd Cir.1958).

The Supreme Court, in *United States v. Kimbell Foods, Inc.*, found that often, the "prudent course is to adopt the ready-made body of state law as the federal rule of decision until Congress strikes a different accommodation." Courts have deferred to state law when recognition of a new federal rule of decision would unduly disrupt long established state property laws. In these cases, the courts have determined that a uniform federal practice is not required. *Id.* at 727–28, 99 S.Ct. 1448.

The present case, however, does require a uniform federal practice. It is doubtful, here, that Congress in enacting the Single Family Mortgage Insurance Program, intended "the outcome to depend upon varying characterizations of state law.". *United States v. Lewis County*, 175 F.3d 671, 677 (9th Cir.1999) *cert. denied* 528 U.S. 1018, 120 S.Ct. 525, 145 L.Ed.2d 407 (1999).

Defendants are correct that in several instances, the Supreme Court has determined that the appropriate federal rule of decision should be state law.[3] As the Su-

---

3. Two of the cases cited by defendants in support if this argument, *United States v. Brosnan*, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960) and *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), involve federal lien rights, not actual governmental ownership of property. This is an important distinction when examining whether or not application of state law would frustrate the purpose of a federal program.

preme Court noted, leaving the decision to the federal courts to lead where Congress has not, does not necessarily require a uniform federal practice. *Id.* at 727–28, 99 S.Ct. 1448. In *Kimbell Foods,* the Supreme Court held that in determining which lien takes precedence, state law applies. The Supreme Court reached this conclusion by noting that the Small Business Administration and the Farmer's Home Administration would in no way be hindered by this rule. Among the reasons for its decision, the Court cited the fact that these agencies sponsored voluntary lending programs, that compliance with state law placed no burden on them (as they had already incorporated many aspects of state law in their lending manuals), that they individually negotiated each loan so customization was not a problem, and that the government assumes the risk when it makes individual loans. *Id.* at 729–36, 99 S.Ct. 1448.

Although *Kimbell Foods* has many similarities to the case at hand, particularly the fact that it involved government lending programs, there are several important distinctions. First, while both cases involve federal lending programs, the relative positions of the agencies are vastly different. In the present case, the technicalities of the lending program are not at issue. Here, a private lender loaned money to an eligible buyer, the borrower defaulted, the lender foreclosed and, HUD ultimately acquired the property and reimbursed the lender for its loss as it was required to do under the Single Family Mortgage Insurance Program. Thus, we are concerned with the role of the government as a property owner and not whether its lien rights should take precedence over other creditors. It is in this context that the Court must decide whether to apply federal or state law as the federal rule of decision. In these circumstances, the most relevant consideration is the gravity of the federal interest which the Ninth Circuit has found

in a similar circumstance, necessitates the application of federal law. *Lewis County,* 175 F.3d at 677.

Second, the government has correctly noted that there is a significant difference between the government's posture in *Kimbell* and here, as the creditors in *Kimbell* had no ability to sue the government to collect their debts, if the federal government's liens rendered the creditor liens less valuable. Here, HUD concedes that Coast Assessment and Sky Meadow could have sued the United States under the "sue and be sued" clause found in the statute and collected the past due assessment fees. 12 U.S.C. § 1702

Most importantly, the Ninth Circuit has expressly held that *Kimbell Foods* is not applicable in the case of foreclosure sales of federally owned land. *Lewis County,* 175 F.3d at 676. In *Lewis County,* the Ninth Circuit considered whether a state could properly tax federal lands, pursuant to an express grant of such power to the states, and whether, if such taxes were appropriate, the state could foreclose on the federal property for non-payment of taxes. The federal government acquired ownership of the land under a loan program administered by the Farm Service Agency, an agency of the Department of Agriculture.[4] By a specific act of Congress, the property acquired was subject to state and local taxes in the same manner that other non-federal property was taxed. *Id.* at 674.

Sky Meadow argues that because *Lewis County* involved a judicial foreclosure action and was hence, a suit against the United States without its consent, the case is inapplicable. (Sky Meadow's Opp. at 11–12.) The Court disagrees. This argument relates to the doctrine of sovereign immunity and not what rule of decision should apply to this case. The issue in *Lewis County* was whether such property

4. The Farm Service Agency lends money to farmers and ranchers unable to obtain loans elsewhere. 7 U.S.C. § 1922. If the farmer defaults, the agency may acquire title to the land. 7 U.S.C. § 1985(a).

could be subject not only to taxation but to interest and penalties, including being sold at a judicial foreclosure sale by the county upon the federal government's failure to pay state taxes. The Circuit held that the statute's express consent to taxation did not extend to the imposition of interest and penalties and that a foreclosure action against federally owned land was a suit against the federal government and could not be prosecuted without its consent. *Id.* at 677–78.

The Circuit also held that state law should not be determinative where a federal interest is paramount as in the case of a foreclosure proceeding against government owned property or imposition of interest and penalties for late payment. *Id.* at 677. Whether it was a judicial or non-judicial foreclosure sale is irrelevant, the government's interest is that it not lose its property, regardless of how the loss occurs. *Id.* at 677. Thus, what is critical in this context of a national federal program like the Single Family Mortgage Insurance Program, is that the United States not lose its property irrespective of whether the sale occurs through a judicial foreclosure sale or a private non-judicial foreclosure proceeding authorized by state law.

The Ninth Circuit recognized that foreclosing on federally owned property interfered with the statutory mission of a federal government agency—the Farm Service Agency. Under the statute, the agency was required to offer the forfeited land to other qualified farmers. The county was under no such obligation and could therefore frustrate Congress' stated legislative purpose.

In addition to the Ninth Circuit's holding in *Lewis County,* a district court in South Carolina has also determined that foreclosing on federal property raises unique issues of federal law. In *United States v. County of Richland,* 500 F.Supp. 312 (D.S.C.1980), a county foreclosed upon HUD owned property, for taxes owed prior to HUD's acquisition of the property.

The district court held that the foreclosure sale was void. *Id.* at 317.

The county in *Richland* argued that because it was specifically permitted to tax HUD owned properties under federal law, via an express congressional waiver, it should be entitled to sell the land for failure to pay taxes. The district court disagreed stating that "[t]o subject the property of the United States to levy and sale would require a specific waiver" in addition to the waiver regarding the ability to tax the property. *Id.* at 315.

The district court in *Richland* found that in permitting the county to foreclose on HUD's property it might "substantially impair [ ] the Government's participation in the home mortgage market and . . . defeat [ ] the purpose of the National Housing Act."

As is clear from *Lewis County* and *Richland,* whether or not the application of state law would interfere with a program's governmental purpose is a central aspect in the analysis. In both *Lewis County* and *Richland* the courts determined that a uniform federal policy was necessary to further Congress' intent in establishing the particular federal program. In the present case, the non-judicial foreclosure sale interferes with the objectives of the Single Family Mortgage Insurance Program. Here, the government argues that if it does not receive quiet title to the property it will suffer a net loss to the Mutual Mortgage Insurance Fund; a critical component of the National Housing Act and therefore of the Single Family Mortgage Insurance Program. Barring additional congressional funding, a foreclosure sale of HUD's property will frustrate the purpose of the program, i.e. to insure home loans extended by private lenders to enable low to moderate income buyers to purchase a home. Because application of state law as the federal rule of decision would interfere with the statutory mission of HUD, the Court must apply

federal law in order to achieve a uniform federal rule of decision.[5]

Just as the Ninth Circuit concluded in *Rust,* the Court concludes that permitting a private entity to sell property owned by the federal government hinders the government's goal in carrying out congressionally mandated objectives. The purpose of the Single Family Mortgage Insurance Program, is to assist low and moderate income buyers to purchase a home. If HUD is circumscribed in its ability to replenish the Mutual Mortgage Insurance Fund, then its ability to facilitate home ownership by eligible individuals is limited.[6]

■■■ Having established that the Court must apply a uniform federal rule of decision, the question remains what rule should apply. Because Congress has not expressly spoken on this issue, the Court must "fashion the governing rule of law according to [federal court] standards." *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (establishing the *Clearfield* doctrine which controls how federal courts are to rule when there is no congressional mandate); *see also Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640–41, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (holding that the rights and obligations of the United States are an appropriate area for federal common law). In formulating the appropriate federal rule of decision the Court looks to the purpose behind the congressional act at issue—the Single Family Mortgage Insurance Program and its goal of facilitating home ownership for individuals with low or moderate incomes.

■■■ Congress has the power to determine the conditions upon which property of the United States is sold or otherwise disposed. *Butte City Water Co. v. Baker,* 196 U.S. 119, 126, 25 S.Ct. 211, 49 L.Ed. 409 (1905). An individual or entity, may not dispose of federally owned property unless Congress has conferred, expressly or implicitly, such power. *Id.; see also Royal Indemnity Co. v. United States,* 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941) (subordinate officers of the IRS lacked statutory authority to release tax bond); *Utah Power & Light Co.,* 243 U.S. at 404, 37 S.Ct. 387 (holding that state law of eminent domain is not applicable to federal land except as adopted or made applicable by Congress). In the National Housing Act statutory scheme, Congress has stated that the Secretary of HUD must dispose of HUD owned property in a manner that expands home ownership opportunities, strengthens neighborhoods and communities, and ensures a maximum return to the mortgage insurance fund. 24 C.F.R. § 291.1(a)(2). The statutory scheme is clear: only HUD may sell prop-

5. Defendants argue that the present case is distinguishable from *Lewis County* and *Richland* as it involves non-judicial foreclosure. In both *Lewis County* and *Richland,* as well as most of the cases cited by HUD, the cases involved an actual lawsuit against the federal government. In *United States v. Brosnan,* the Supreme Court held that a private non-judicial foreclosure sale under California law was not a "suit" against the United States. The Court stated that it did "not think that the doctrine of sovereign immunity reach[ed] so far." *United States v. Brosnan,* 363 U.S. 237, 250, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960). Regardless of the sovereign immunity issue, it is sufficient under the Supremacy Clause that the non-judicial foreclosure sale interfered with the government's property rights. While a non-judicial foreclosure sale is not a suit against the government, the end result, i.e. the taking of property from the government without its consent, interferes with the government's property rights by definition. Additionally, in *Rust,* the Ninth Circuit makes it clear that where a non-judicial foreclosure sale interferes with the government's rights under the Property Clause, the sale is void.

6. In *Burroughs v. Hills,* 564 F.Supp. 1007, 1017 (N.D.Ill.1983) *aff'd* 741 F.2d 1525 (7th Cir.1984), the district court held that a private party could not sue HUD for hazardous conditions on its property, primarily because such actions would negatively impact the ability of HUD to fulfill its legislative mandate of providing affordable housing. A similar concern applies here.

erty acquired under the Single Family Mortgage Insurance Program.

■ In sum, for the reasons stated above, the Court concludes that the congressionally mandated policy, that only HUD may dispose of property it has acquired under the FHA program, is the appropriate federal rule of decision that should be applied in this case. As state law is not applicable, the non-judicial foreclosure sale of HUD's property located at 5994 Sky Meadow Street, Riverside, California, is void and HUD is entitled to a judgment quieting title in the subject property in its favor.

## B. Remaining Issues

In granting the government's motion for partial summary judgment, the Court leaves unresolved what relief several of the parties might be entitled to against HUD or against each other. In earlier status conferences with the parties it was suggested that resolution of the critical issue, i.e. whether Sky Meadow could properly initiate foreclosure proceedings against property acquired by the United States under the Single Family Mortgage Insurance Program, would allow the parties to resolve peripheral issues, such as payment of all past due assessment fees by HUD and what rights, if any, subsequent purchasers or secured parties may have in the subject property. The Court recognizes that final resolution of this case and the other related cases may well depend on whether the Court's analysis can withstand appellate review. Thus, it appears that it would be in the interest of all parties that the Court order entry of a partial judgment under Fed.R.Civ.P. 54(b) so that the Court's decision can be appealed to the Ninth Circuit.

The Court orders the parties to appear for a status conference to discuss entry of a partial judgment under Fed.R.Civ.P. 54(b) consistent with the views expressed in this Order. If the parties and the Court determine that entering a partial judgment is the most efficient and beneficial way to proceed, then the Court need not resolve, at this time, whether defendant Erwin is a "bona fide purchaser" and if so whether such status would affect the government's right to a quiet title judgment against Erwin. Given the Court's ruling, Erwin's status as a bona fide purchaser, assuming he qualifies as such, may be of no consequence.

## V.

### Conclusion

For the reasons given above, the government's motion for partial summary judgment quieting title in its favor is **GRANTED** and defendants Sky Meadow, Coast Assessment, and Shane Erwin's motions are **DENIED.** It is further ordered that the parties appear for a status conference on August 10, 2000 at 1:30 p.m. in courtroom 850 at the Roybal Federal Building. At least 5 days prior to the status conference the parties shall submit a status report regarding further proceedings and, in an attempt to expedite this matter, the government shall submit a proposed form of judgment under Fed.R.Civ.P. 54(b).

**IT IS SO ORDERED.**