**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

STATE OF WASHINGTON; JAY
ROBERT INSLEE, in his official
capacity as Governor of the State of
Washington; JOEL SACKS, in his
official capacity as Director of the
Washington State Department of
Labor and Industries; WASHINGTON
STATE DEPARTMENT OF LABOR &
INDUSTRIES,
*Defendants-Appellees.*

No. 19-35673

D.C. No.
4:18-cv-05189-
SAB

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Stanley Allen Bastian, District Judge, Presiding

Argued and Submitted July 6, 2020
Seattle, Washington

Filed August 19, 2020

Before:  RICHARD R. CLIFTON and MILAN D. SMITH,
JR., Circuit Judges, and JAMES DONATO,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

**SUMMARY**[**]

### Governmental Immunity

The panel affirmed the district court's summary judgment in favor of the State of Washington, upholding HB 1723, which amended Washington's workers' compensation scheme and established for workers at the Hanford site – a decommissioned federal nuclear production site – a presumption that certain conditions and cancers are occupational diseases that is rebuttable only by clear and convincing evidence.

The United States claimed that HB 1723 impermissibly directly regulated and discriminated against the Federal Government and those with whom it dealt in violation of the doctrine of intergovernmental immunity.

The panel held that HB 1723 fell within the waiver of 40 U.S.C. § 3172, which authorizes States to apply their workers' compensation laws to federal lands and projects in

---

[*] The Honorable James Donato, United States District Judge for the Northern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the states in the same way as if the premises were under the exclusive jurisdiction of the States. The panel held, accordingly, that HB 1723 did not violate the doctrine of intergovernmental immunity.

The panel declined to resolve two other issues raised by the parties because they were not properly before the court.

---

**COUNSEL**

John S. Koppel (argued) and Mark B. Stern, Appellate Staff; Bill Hyslop, United States Attorney; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Plaintiff-Appellant.

Noah G. Purcell (argued), Solitor General; Anastasia Sandstrom, Senior Counsel; Paul Wiedeman, Assistant Attorney General; Robert W. Ferguson, Attorney General; Office of the Attorney General, Olympia, Washington; for Defendants-Appellees.

---

**OPINION**

M. SMITH, Circuit Judge:

The Hanford site is a decommissioned federal nuclear production site that sprawls over more than five hundred square miles in southeastern Washington State. While active between 1944 and 1989, the Hanford site produced nearly two-thirds of the nation's weapons grade plutonium for use in the United States nuclear program during World War II and the Cold War. The site also generated significant

amounts of highly radioactive and chemically hazardous waste. The United States Department of Energy (DOE) has overseen cleanup of the Hanford site since 1989, primarily relying on private contractors and subcontractors to perform the actual cleanup work. These cleanup operations are expected to last for at least six more decades.

Employees of private contractors working on federal land, like the employees of the DOE contractors who work at the Hanford site, may pursue state workers' compensation claims. 40 U.S.C. § 3172; Wash. Rev. Code § 51.12.060. The DOE has chosen to insure such claims for most of its contractors at the Hanford site. In 2018, Washington amended its workers' compensation scheme by enacting HB 1723, a law that applies only to Hanford site workers who work directly or indirectly for the United States. 2018 Wash. Sess. Laws 226 (codified at Wash. Rev. Code § 51.32.187). HB 1723 establishes for these workers, *inter alia*, a presumption that certain conditions and cancers are occupational diseases, which is rebuttable by only clear and convincing evidence. Wash. Rev. Code § 51.32.187(2)(a), (b).

Concerned about "heightened liability," the United States sued Washington[1], claiming that HB 1723 impermissibly directly regulates and discriminates against the Federal Government and those with whom it deals in violation of the doctrine of intergovernmental immunity. The district court granted summary judgment for Washington, pursuant to a congressional waiver of

---

[1] The Defendants are the State of Washington, Washington Governor Jay Inslee, the Washington State Department of Labor and Industries (DLI), and DLI Director Joel Sacks. We refer collectively to them as "Washington" and "the State."

immunity that authorizes the States to apply their workers' compensation laws to "all" federal land and projects in the states "in the same way and to the same extent as if the premises were under the exclusive jurisdiction of the State[.]" 40 U.S.C. § 3172. The United States appeals. We hold that HB 1723 falls within § 3172's waiver and, thus, does not violate the doctrine of intergovernmental immunity. We, therefore, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Factual Background

#### A.  The Hanford Site Cleanup

The Hanford site cleanup is, in the DOE's words, "unprecedented in its scale and complexity." The liquid waste that the site generated—over fifty million gallons—is stored in 177 underground holding tanks, most of which are over seven decades old. The site also produced 270 billion gallons of contaminated groundwater, twenty-five million cubic feet of buried or stored solid waste, 2,300 tons of spent nuclear fuel, and twenty tons of plutonium bearing materials. There are roughly 10,000 DOE contractor employees at the Hanford site, some of whom perform the cleanup operations. Individuals working at the Hanford site cleanup operations face exposure to radioactive substances and hazardous chemicals.

#### B.  Washington's Workers' Compensation Scheme

The Washington Industrial Insurance Act (WIIA) is the State's workers' compensation and industrial insurance regime. *See* Wash. Rev. Code § 51.04.10 *et seq*. The WIIA establishes a statutory mechanism for workers that have suffered injury or contracted an "occupational disease," *id.*

§ 51.08.140, caused by their employment to seek compensation through an award of benefits. *Dennis v. Dep't of Labor & Indus. of State of Wash.*, 745 P.2d 1295, 1301 (Wash. 1987).

Since 1937, the WIIA has covered employees of private contractors who work on federal land located in the state. *See* An act relating to workmen's compensation, ch. 147, 1937 Wash. Sess. Laws 525 (codified as amended at Wash. Rev. Code § 51.12.060).[2]  The State extended its workers' compensation laws to the employees of federal contractors following the enactment of 40 U.S.C. § 290, the former federal law that authorized states to apply their workers' compensation laws to federal land and projects located

---

[2] In its present form, Washington Revised Code § 51.12.060 provides that:

> The application of this title and related safety laws is hereby extended to all lands and premises owned or held by the United States of America, by deed or act of cession, by purchase or otherwise, which are within the exterior boundaries of the state of Washington, and to all projects, buildings, constructions, improvements, and property belonging to the United States of America, which are within the exterior boundaries of the state, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the state, and as fully as is permitted under the provisions of that act of the congress of the United States approved June 25, 1936, granting to the several states jurisdiction and authority to apply their state workers' compensation laws on all property and premises belonging to the United States of America, . . . PROVIDED, That this title shall not apply to employees of the United States of America.

within the state.**³**   Wash. Rev. Code § 51.12.060.   Thus, employees of DOE contractors and subcontractors at the Hanford site may pursue state workers' compensation claims.  The WIIA, however, does not cover DOE's own employees.  *Id.*

In 1997, Washington amended the WIIA to permit the DLI to approve, upon the request of the United States Secretary of Defense or the Secretary of the DOE, "special insuring agreements providing industrial insurance coverage for workers engaged in the performance of work, directly or indirectly, for the United States regarding projects and contracts at the Hanford Nuclear Reservation." 1997 Wash. Sess. Laws 573 (codified at Wash. Rev. Code § 51.04.130). The DOE has paid the benefits awards and administrative costs of workers' compensation claims for the employees of

---

**³** Section 290 provided, in relevant part, that:

> [W]hatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliances with the State workmen's compensation laws of said States and with the enforcement of and requiring compliance with the orders, decisions, and awards of said constituted authority of said States shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State and to all projects, buildings, constructions, improvements, and property belonging to the United States of America, which is within the exterior boundaries of any State, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be.

Act of June 25, 1936, ch. 822, 49 Stat. 1938.

many of its contractors and subcontractors pursuant to contractual obligations as well as pursuant to memoranda of understanding (MOU) with the State. The DOE and Washington entered into the most recent MOU after Washington enacted HB 1723. Private contractors not covered by an MOU provide workers' compensation coverage through the State workers' compensation fund or as self-insurers.

## C. HB 1723

This case concerns HB 1723's amendments to the WIIA. The law applies to "United States department of energy Hanford site workers" and "Hanford site workers," defined as:

> [A]ny person, including a contractor or subcontractor, who was engaged in the performance of work, either directly or indirectly, for the United States, regarding projects and contracts at the Hanford nuclear site and who worked on the site at the two hundred east, two hundred west, three hundred area, environmental restoration disposal facility site, central plateau, or the river corridor locations for at least one eight-hour shift while covered under this title."

Wash. Rev. Code § 51.32.187(1)(b).[4] It is estimated that the law may cover some 100,000 persons.

---

[4] "Hanford nuclear site" and "Hanford site" are defined to mean "the approximately five hundred sixty square miles in southeastern Washington state" excluding certain leased lands, state-owned lands, and

HB 1723 creates a "prima facie presumption" for "United States [DOE] Hanford site workers" that certain "diseases and conditions" are "occupational diseases" under the WIIA. *Id.* § 51.32.187(2)(a); *see also id.* §§ 51.32.187(3) (identifying certain conditions), 51.32.187(4) (specifying the requirements for and application of the presumption to certain cancers). An employer may rebut the presumption by "clear and convincing evidence," which includes the "use of tobacco products, physical fitness and weight, lifestyle, hereditary factors, and exposure from other employment or nonemployment activities." *Id.* § 51.32.187(2)(b). The presumption applies "following termination of service for the lifetime of" a covered worker. *Id.* § 51.32.187(5)(a). A covered worker or the survivor of a deceased covered worker may refile a previously denied claim. *Id*. § 51.32.187(5)(b). In addition, a claimant may recover reasonable costs, including attorney's fees, in any appeal that results in a benefits award when the presumption applies. *Id*. § 51.32.187(6).

## II.  The District Court Proceedings

The United States brought suit for declaratory and injunctive relief against Washington, claiming that HB 1723 discriminates against the Federal Government and directly regulates it in violation of the doctrine of intergovernmental immunity. On cross motions, the district court granted summary judgment for the State. The court reasoned that 40 U.S.C. § 3172's waiver of immunity permits the State "to use the same power it possesses to craft workers compensation laws for non-federal employees to address

---

lands owned by the Bonneville Power Administration, which is owned by the United States[.]"  Wash. Rev. Code § 51.32.187(1)(a).

injured employees on federal land," including "the ability to legislate, in a piecemeal fashion, to address specific risks to employees in specific industries."  The United States timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review de novo a district court's decision on cross motions for summary judgment.  *Empire Health Found. v. Azar*, 958 F.3d 873, 882 (9th Cir. 2020).  Statutory interpretation is a question of law that we review de novo.  *Comcast of Sacramento I, LLC v. Sacramento Metro. Cable TV Comm'n*, 923 F.3d 1163, 1168 (9th Cir. 2019).

## ANALYSIS

## I.  The Doctrine of Intergovernmental Immunity

The United States' claims against Washington invoke the doctrine of intergovernmental immunity.  That doctrine "derive[s] from the Supremacy Clause of the Federal Constitution, U.S. Const., art. VI, which mandates that 'the activities of the Federal Government are free from regulation by any state.'"  *United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019) (quoting *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014)), *cert. denied*, —S. Ct.—, 2020 WL 3146844 (U.S. June 15, 2020).  The doctrine traces its origins to "the Supreme Court's decision in *McCulloch v. Maryland*, which established that 'the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government.'"  *U.S. v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819)).  Pursuant to

the doctrine, "state laws are invalid if they 'regulate[] the United States directly or discriminate [ ] against the Federal Government or those with whom it deals.'" *Boeing*, 768 F.3d at 839 (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality decision)). This is so "*unless* Congress provides 'clear and unambiguous' authorization for such regulation." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988) (quoting *EPA v. State Water Res. Control Bd.*, 426 U.S. 200, 211 (1976)) (emphasis added).

By its terms, HB 1723 is a state workers' compensation law that applies only to individuals who perform work at the Hanford site "directly or indirectly, for the United States." Wash. Rev. Code § 51.32.187(1)(b). Both sides agree that § 3172 waives the Federal Government's immunity from state workers' compensation laws. Our understanding of § 3172's predecessor statute would support that conclusion. *See Begay v. Kerr-McGee Corp*., 682 F.2d 1311, 1319 (9th Cir. 1982) (concluding that 40 U.S.C. § 290 "unambiguously permits application of state workers' compensation laws to all United States territory within the state."). The United States and Washington disagree, however, about whether § 3172 permits workers' compensation laws that apply uniquely to the workers of those with whom the Federal Government deals. Our resolution of § 3172's scope will determine whether HB 1723 falls within the waiver and, thus, whether HB 1723 violates the doctrine of intergovernmental immunity.

## II. Section 3172's Waiver of Immunity Encompasses HB 1723

To ascertain § 3172's scope, we "begin[] with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). "[W]e examine not only the specific provision at issue, but also the structure of the statute as a

whole, including its object and policy." *United States v. Lillard*, 935 F.3d 827, 833 (9th Cir. 2019) (citation omitted). Section 3172(a) provides that:

> The state authority charged with enforcing and requiring compliance with the state workers' compensation laws and with the orders, decisions, and awards of the authority may apply the laws to all land and premises in the State which the Federal Government owns or holds by deed or act of cession, and to all projects, buildings, constructions, improvements, and property in the State and belonging to the Government, in the same way and to the same extent as if the premises were under the exclusive jurisdiction of the State in which the land, premises, projects, buildings, constructions, improvements, or property are located.

40 U.S.C. § 3172(a).

We do not consider the meaning of this text on a blank slate. In *Goodyear Atomic Corp. v. Miller*, the Supreme Court addressed the predecessor statute to § 3172. In *Goodyear*, a private contractor operating a federally owned nuclear production facility challenged an Ohio workers' compensation law that provided a supplemental workers' compensation award for injuries resulting from an employer's violation of a state safety regulation. 486 U.S. at 176. Assuming that the Ohio law was "sufficiently akin to direct regulation . . . to be potentially barred by the Supremacy Clause," the Court concluded that "§ 290 provides the requisite clear congressional authorization for

the application of the provision to workers at the Portsmouth facility."**[5]** *Id.* at 182.

To arrive at that conclusion, the Court rejected the argument raised by the private contractor and the United States Solicitor General that the statute's use of the phrase "workmen's compensation laws" was "not intended to include the additional-award provision in Ohio's workers' compensation law." *Id.* at 183. The Court observed that the statute did not define the phrase "workmen's compensation laws." *Id.* Focusing on the essential terms of the statutory text, including the phrase "in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State," the Court stated unequivocally that the statute "place[d] *no express limitation* on the type of workers' compensation scheme that is authorized." *Id.* (emphasis added). Rather than limiting the authorized workers' compensation laws, the Court explained that "[o]n its face, § 290 compel[led] the same workers' compensation award for an employee injured at a federally owned facility as the employee would receive if working for a wholly private facility." *Id*. at 183–84.

As the United States concedes, § 3172 is materially identical to its predecessor.**[6]** But the United States homes in

---

**[5]** The United States does not explain here how HB 1723 directly regulates the Federal Government by adopting a presumption to determine whether a given "Hanford site worker" is entitled to receive a workers' compensation award pursuant to the WIIA. As in *Goodyear*, we will assume that HB 1723 is "sufficiently akin to direct regulation" of the Federal Government to trigger the doctrine of intergovernmental immunity. 486 U.S. at 182.

**[6]** There are some differences between § 3172 and its predecessor. Unlike its predecessor, § 3172 does not refer to "workmen's

on the phrase "in the same way and to the same extent" to claim that § 3172 is a "very limited waiver" of immunity. The United States reads this text and *Goodyear* as "strongly suggest[ing]" that § 3172 authorizes only the "extension of generally applicable laws," rather than "discrete" state laws that "single out" the Federal Government and its contractors. We disagree.

The plain text of § 3172 does not purport to limit the workers' compensation laws for which it waives intergovernmental immunity to only those that are "generally applicable." We are not free to add text to a statute that is not there. *Ariz. State Bd. for Charter Sch. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1007 (9th Cir. 2006). Like its predecessor, § 3172 does not define the phrase "state workers' compensation laws" and otherwise "places *no express limitation* on the type of workers' compensation scheme that is authorized." *Goodyear*, 486 U.S. at 183 (emphasis added). The Court's application of the predecessor statute in *Goodyear* does not warrant a different reading of the statute. To be sure, the Court considered there a state workers' compensation law that did not concern a particular employer, or a particular site located in the state, like HB 1723 does. *Id.* at 183–85. But the Court did not purport to impose the limitation on the statute that the United

---

compensation laws," but rather "workers' compensation laws." And, instead of providing that the state workers' compensation authority "*shall* have the power and authority to apply" workers' compensation laws, Congress has provided that the state authority "*may* apply" such laws. This change signifies nothing more than that a state may, in its discretion, opt to apply its workers' compensation laws to federal premises in the state. *Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir. 1988) ("'May' is a permissive word, and we will construe it to vest discretionary power absent a clear indication from the context that Congress used the word in a mandatory sense.").

States seeks to impose here; indeed, the Court recognized that the statute placed no express limitation on permissible workers' compensation laws.  *Id*. at 183.  We cannot properly construe § 3172 in a way that would conflict with that understanding of a materially identical statutory provision.

Equally unavailing is the United States' assertion that the phrase "in the same way and to the same extent" codifies a nondiscrimination rule that limits § 3172's waiver.  Our decision in *United States v. Lewis County*, 175 F.3d 671 (9th Cir. 1999), is illustrative.

In *Lewis County*, we considered the application of a federal statute that "waives the immunity of the federal government from state taxation by authorizing state and local governments to tax … property owned by the federal Farm Service Agency ('FSA') 'in the same manner and to the same extent as other property is taxed.'"  *Id*. at 673 (quoting 7 U.S.C. § 1984).  In relevant part, the United States challenged a Washington county's taxation of FSA-owned land.  The United States argued that the county had discriminated against a federal agency in violation of § 1984 and the doctrine of intergovernmental tax immunity because the county did not tax a comparable state agency. *Id*. at 674–75.  We rejected that argument because "Congress ha[d] made its assessment of the federal interest in [] § 1984[.]" *Id*. at 676.  We explained that, by virtue of that statute, Congress had "sufficiently qualifie[d] the intergovernmental immunity of the United States to permit the state to make the distinction it has."  *Id*.  We saw "no reason why state or local governments [had to] engage in a circular process of taxing themselves in order to impose the tax on the federal government that Congress has authorized."  *Id.*

Echoing its arguments in *Lewis County*, the United States argues here that HB 1723 violates the doctrine of intergovernmental immunity because it discriminatorily applies only to Hanford site workers who work indirectly or directly for the Federal Government, without any application to state or private entities who perform work on or near the Hanford site. As in *Lewis County*, we are presented with a congressional waiver of immunity that contains similar text—i.e., "in the same way and to the same extent"—that we have already understood to permit a "distinction" based on federal status. "A basic principle of interpretation is that courts ought to interpret similar language in the same way, unless context indicates that they should do otherwise." *Shirk v. United States ex rel. Dep't of Interior*, 773 F.3d 999, 1004 (9th Cir. 2014). The United States identifies no reason why we should depart from our understanding in *Lewis County*. As with the waiver there, Congress codified the federal interest in § 3172. This statute authorizes the States to apply workers' compensations laws to federal land located in the state without limitation and thus permits the distinction that HB 1723 draws.

In light of the United States' arguments here, a comparison of § 3172 with another waiver, namely the waiver contained in the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9620(a)(4), reinforces the conclusion that § 3172 does not codify a nondiscrimination rule.[7]

---

[7] In addition to CERCLA, the district court contrasted § 3172 with 4 U.S.C. § 111, a waiver of intergovernmental tax immunity that expressly does not permit state and local taxation that "discriminate[s]" against United States' officers or employees simply because of their federal status. Section 3172, indeed, bears no semblance to that

CERCLA waives the Federal Government's immunity from state laws concerning the removal and remediation of hazardous substances, but that waiver "shall not apply to the extent a State law would apply any standard or requirement to [Federal] facilities which is *more stringent* than the standards or requirements applicable to facilities which are not owned or operated by [the Federal Government]." 42 U.S.C. § 9620(a)(4) (emphasis added).  We held in *Boeing Co. v. Movassaghi* that this waiver did not save a California law that imposed "more stringent standards" on the Federal Government for the cleanup of a federal nuclear site located in California.  768 F.3d at 841–42.  Because we could locate no other congressional authorization, we concluded that the California law both directly regulated and discriminated against the Federal Government in violation of the Supremacy Clause and the doctrine of intergovernmental immunity.  *Id*. at 840–43.

Here, the United States seeks to import into the statutory phrase "in the same way and to the same extent" the limitation that Congress codified in CERCLA.  The United States avers that HB 1723 impermissibly applies "more stringent regulation" to the Federal Government.  And it argues that reading § 3172 to "authorize[] a state to enact laws that subject federal contractors, and only federal contractors, to more stringent standards than those of generally applicable state law" is "atextual."  Neither the text on which the United States focuses, nor any other text in § 3172, however, excepts from the waiver those state workers' compensation laws that are "more stringent" as

provision.  Contrary to the United States' objection to this comparison, the comparison merely underscores that Congress knows how to limit a waiver in the same way that the United States asks us to read § 3172.

applied to the Federal Government or those with whom it deals.  *Boeing* and its analysis are inapposite.

We arrive, finally, to considering the statutory text that the United States' reading of § 3172 omits: "as if the premises were under the exclusive jurisdiction of the State[.]"  40 U.S.C. § 3172.  We, of course, cannot ignore this text.  *Ariz. State Bd. for Charter Sch.*, 464 F.3d at 1007 (stating that a court may not "subtract" statutory text).  And we must read it with the rest of the statutory text.  *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view toward their place in the overall statutory scheme.").

When the phrase "in the same way and to the same extent" is read with "as if the premises were under the exclusive jurisdiction of the State," it is evident that § 3172 removes federal jurisdiction as a barrier to a state's authority over workers' compensation laws for all who are located in the state.  *See Peak v. Small Business Admin.*, 660 F.2d 375, 376 n.1 (8th Cir. 1981) ("[S]tate workmen's compensation laws, as applied to private employers working on federal land, are freed from any restraint by reason of the exclusive federal jurisdiction."); *Capetola v. Barclay White Co.*, 139 F.2d 556, 559 (3d Cir. 1943) ("[T]he purpose and effect of the . . . Act was to free State workmen's compensation laws from the restraint upon their enforcement theretofore existing by reason of the exclusive federal jurisdiction of lands within the States[.]"), *cert. denied*, 321 U.S. 799 (1944); *Travelers Ins. Co. v. Cardilllo*, 141 F.2d 362, 363 (D.C. Cir. 1942) ("[T]he statute . . . revest[s] State jurisdiction which, presumably, Congress thought might be divested by the acquisition and ownership of the land by the United States for Federal purposes.  The effect . . . is . . . to

restore the status quo ante, and the purpose was to make sure that employees of contractors during work on a Federal building in a Federal area would be able to recover compensation benefits for disability or death.").

By removing federal jurisdiction as a barrier to application of state workers' compensation laws to those who work on federal land located in the State, § 3172 authorizes the State to apply to such land the authority it has over workers' compensation in its exclusive jurisdiction. Subject to constitutional constraints, the States possess broad authority to enact laws that are reasonably deemed to be necessary to promote the health, safety, and general welfare of those in its jurisdiction, including workers' compensation laws. *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164, 172 (1972); *Mountain Timber Co. v. Wash.*, 243 U.S. 219, 238 (1917). We presume that Congress was aware of this authority when it fashioned § 3172 to permit the State to apply its workers' compensations laws to federal land in the State "as if" it were under the State's "exclusive jurisdiction," without exception. *Goodyear*, 486 U.S. at 184–85. Critically, as it did in the district court, the United States conceded during oral argument that Washington could enforce HB 1723 if the Federal Government were not involved and the Hanford site were a state project.[8] As we read it, § 3172 permitted Washington to enact and apply HB 1723 to federal contractors and their employees at the Hanford site.

---

[8] The State also previously amended its workers' compensation laws to adopt a presumption applicable only to firefighters. Wash. Rev. Code § 51.32.185. Thus, it is not unprecedented for Washington to exercise its authority to fashion workers' compensation laws to adopt a presumption tailored to certain employment.

It thus follows that, "when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1747 (2020).  Section 3172 permits the State to apply workers' compensation laws to federal land located in the State, without limitation, and to make the distinction that it has drawn in HB 1723.  Thus, HB 1723 falls within the scope of § 3172's waiver and does not violate the doctrine of intergovernmental immunity.

## III.    Remaining Issues

Notwithstanding the foregoing, we briefly explain why we decline to resolve two other issues raised by the parties.

First, the United States observes that the Federal Government has fashioned a program for workers injured by exposure to radiation and chemicals at DOE sites, pursuant to the Energy Employees Occupational Illness Compensation Program Act (EEOICPA), 42 U.S.C. § 7384 *et seq*., as amended by 118 Stat. 1811, 2178 (2004). Pursuant to the EEOICPA, the Federal Government has paid out more than $1.75 billion to Hanford workers as of June 2020.[9]  In the United States' view, EEOICPA "properly addresses concerns of this kind."  Although this argument sounds in preemption, the United States has waived that argument by not clearly and distinctly raising it.  *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009).

Second, Washington argues that HB 1723 is rationally related to a government interest and thus is a constitutional

---

[9] *See* United States Dep't of Labor, *Total Benefits Paid by Facility, Cumulative EEOICPA Compensation and Medical Paid – Hanford* (June 30, 2020), available at https://www.dol.gov/owcp/energy/regs/co mpliance/charts/hanford.htm.

exercise of its authority even if the law discriminates against those who deal with the Federal Government.  This argument correctly recognizes that state authority is subject to constitutional constraints, including the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *Weber*, 406 U.S. at 172; *Mountain Timber Co.*, 243 U.S. at 243–45.  But the only claims the United States raised in this case concern whether HB 1723 violates the doctrine of intergovernmental immunity.  We need not go further than § 3172 to resolve those claims.  *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 197 (2009) ("Our usual practice is to avoid the unnecessary resolution of constitutional questions.").

## CONCLUSION

We hold that HB 1723 falls within § 3172's waiver of the Federal Government's immunity from state workers' compensation laws, and thus does not violate the doctrine of intergovernmental immunity.  Consequently, Washington was entitled to summary judgment on the United States' claims.

**AFFIRMED.**